James WYLE, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 69295.

Court of Criminal Appeals of Texas, En Banc.

Sept. 20, 1989.

Dolph Quijano, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder, V.T.C.A. Penal Code, Section 19.-03(a)(2). Death was imposed by the trial court after the jury returned affirmative findings to both special issues submitted pursuant to Art. 37.071(b)(1) and (2), V.A.C.

C.P. Direct appeal to this Court was automatic. Because of our disposition of appellant's sixth point of error, we will reverse the conviction.

Appellant does not challenge the sufficiency of the evidence, so we give only a brief recitation of the facts. Appellant and a companion were traveling to California when they experienced car trouble outside the town of Van Horn. Appellant, carrying a .38 caliber handgun, told his companion to wait with the car while he proceeded to walk back to Van Horn. After resting and obtaining something to eat, appellant walked to an Exxon station where he noticed that the attendant was asleep in a chair. When he opened the door, the attendant was awakened by the sound of a bell on the door. Appellant told Nicholas Flores, the attendant, to give him the money in the register. After taking the money from Flores, appellant repeatedly shot Flores. He then took decedent's wallet and keys to his truck which he drove back to where his companion was located. Appellant and his companion were soon stopped by officers as they traveled towards El Paso. Appellant subsequently confessed to the murder and robbery.

■ In his sixth point of error, appellant contends the trial judge reversibly erred in failing to grant his challenge for cause to prospective juror Shotwell. Appellant challenged Shotwell pursuant to Art. 35.-16(a)(6), V.A.C.C.P., because he had been a witness for appellant at the hearing on his motion to change venue. At the venue hearing Shotwell testified he was the owner of the only funeral home in Culberson County, and his home handled the funeral services for Nicholas Flores, the victim of this alleged offense. Appellant's counsel elicited testimony from Shotwell predominantly about the size of the deceased's funeral.

During voir dire examination of Shotwell, defense counsel established Shotwell had been a witness at the venue hearing and promptly challenged him for cause. The trial judge overruled this challenge. Further questioning of Shotwell by defense counsel revealed he had been called to the

scene of the alleged offense by the Sheriff's office. He was told there had been a shooting and a death, and, as funeral director, it was his duty to remove the body. Shotwell stayed at the scene for a couple of hours, during which time he saw the body of the deceased in the back room and the blood on the floor. He talked to law enforcement personnel "in passing" about the case "since [he knew] everybody" who was investigating the incident. Shotwell also stated he had been hired by the Flores family to handle the funeral and that he knew the deceased and his brother "just on a business basis". Shotwell believed he could be a fair juror, he presumed appellant to be innocent, and he would reach a verdict based only on the facts from the witness stand. Appellant then exercised a peremptory challenge on Shotwell.

During the State's case-in-chief Shotwell was called to testify. He stated he took the deceased's body from the gas station to his funeral home and then transported the body to El Paso to the medical examiner's office. Shotwell did not embalm the body, and he could not recall who had removed the clothing from the deceased.

This point of error presents us with our first opportunity to construe Art. 35.16(a)(6). This statute provides that either the State or the defense may challenge a prospective juror for cause if that person is a witness in the case. The State argues in its brief that this statute does not apply to a person who was a witness at a pre-trial hearing on a change of venue motion. We are not willing to construe this statute in such a limited manner. The problem presented by limiting this challenge for cause to witnesses called during the trial on the merits is that often, during voir dire, a party does not know whether a specific person will be needed as a witness during trial. If a party fails to volunteer during voir dire that the prospective juror is a potential witness during the trial on the merits, the opponent has no basis on which to formulate this challenge for cause. That party could then call the witness during trial, and only then does it become apparent that the opposing party had a proper basis upon which to challenge this

prospective juror, now witness, for cause. Thus limiting this challenge for cause to witnesses during the trial on the merits renders Art. 35.16(a)(6) meaningless and ineffective. We do not believe the legislature intended such a result when enacting this statute.

In *Petrey v. State,* 158 Tex.Crim. 658, 258 S.W.2d 808 (1953), the most recent case that we found touching on this issue, this Court held the trial judge acted properly in sustaining the State's challenge for cause to a prospective juror who had, among other things, testified for the defendant on his motion for a change of venue. Although *Petrey* presents a different factual scenario than the case *sub judice,* it supports our conclusion that Art. 35.16(a)(6) encompasses witnesses at pre-trial hearings. The venireman challenged in *Petrey* was one of the compurgators upon the affidavit for change of venue, was a witness at the hearing, talked to the defendant after charges were filed, and contributed money to his defense. The Court held no error was shown by the action of the trial court in sustaining the State's challenge to this venireman. *Petrey,* 258 S.W.2d at 809.

We also do not read the statute so narrowly to define "witness", as used in Art. 35.16(a)(6), as a person who testifies at any phase of a trial. While the term "witness" certainly encompasses one who testifies at trial, a proper challenge for cause could also be made to an individual who saw the commission of the offense or was so closely connected to the events of the offense or subsequent investigation as to be a "witness" to the crime and its incidents. See *Rubenstein v. State,* 407 S.W.2d 793, 797 (Tex.Cr.App.1966) (McDonald, J. concurring) (jurors who had seen shooting of Lee Harvey Oswald on television were "witnesses" to offense within meaning of Art. 616, V.A.C.C.P.—predecessor to Art. 35.16). In other words, "witness" as used in Art. 35.16(a)(6) includes one who has personal knowledge of facts of the case.

 On the basis of *Petrey* and our reading of Art. 35.16(a)(6), we hold the trial court erred in denying appellant's chal-

lenge for cause to venireman Shotwell. In the instant case the trial judge had the following facts to consider when ruling on appellant's challenge for cause: Shotwell was present at the scene of this capital murder shortly after it was committed; he assisted law enforcement somewhat in the investigation; he handled the victim's funeral; and he was acquainted with the victim and members of his family. These facts alone were sufficient to put the trial judge on notice that Shotwell was a "witness in the case" such that he should have sustained appellant's challenge for cause. Additionally, Shotwell had already testified in the pre-trial hearing on appellant's change of venue motion and, thus, was a de facto "witness in the case" under these facts.[1]

Thus we find the trial court erred in failing to sustain appellant's challenge of Shotwell. Appellant was harmed because the State, in effect, was given one more peremptory challenge than appellant.[2] We hold the trial court therefore reversibly erred by denying appellant's challenge for cause to venireman Shotwell. Appellant's sixth point of error is sustained.

Realizing the potential of a retrial of this cause, we address other pertinent points of error concerning matters which may reoccur.

Appellant, in his first point of error, asserts the trial court erred when it failed to grant his first and second motions for a pollster. Defense counsel argued that a statistician was required to permit him to show the level of prejudice against

his client if he was tried in Van Horn to support his motion for change of venue. The defendant fails to cite any statute or case law in support of his proposition and the State's attorney stated he was unable to find any cases in Texas addressing this particular issue. Our review of the case law, likewise, has not revealed any case in Texas that has required the appointment of a pollster to determine the community sentiment. A determination of whether there exists "so great a prejudice against [the defendant] that he cannot obtain a fair and impartial trial," Art. 31.03(a)(2) V.A.C.C.P., may be accomplished in a myriad of ways. The defendant may offer newspaper accounts of the crime, video or television coverage, audio portions from tape recorded interviews or radio programs, and witnesses from the community. This list, however, is not exclusive. It, arguably, could permit the results of a statistical survey of community sentiment by a pollster. These types of compilations for community sentiment are not required to be introduced at a hearing on a change of venue nor is there a requirement that their expense be paid for by the State. Appellant has not shown he was entitled to a pollster, and we cannot say the trial court abused his discretion in not granting appellant's motions. Therefore, his first point of error is overruled.

In appellant's fifth point of error, he argues that the court erred in failing to provide him, personally, with a list of persons summoned as venirepersons at least two days prior to jury selection as

1. Our holding today should not be construed, however, to mean that each and every time a person is called to the stand as a witness in a pre-trial hearing as well as a prospective juror in the trial that that person should be automatically excluded for cause. The grant or denial of a challenge for cause is within the discretion of the trial judge. On appellate review, when determining whether the trial judge abused his discretion in ruling on a challenge for cause, we must consider the facts and circumstances surrounding each challenge presented to the trial judge. Thus we leave open the possibility that a venireman may not be subject to a valid challenge for cause under Art. 35.16(a)(6) simply because one of the parties called him to the witness stand during a pre-trial hearing. What-

ever the situation that might cause such a possibility to become a reality, it is not present here. We find the State's argument about pretext summoning of pre-trial witnesses especially ludicrous since the situation here was even further exacerbated by the fact that Shotwell ultimately testified for the State at trial.

2. We note appellant has properly preserved voir dire error. He exercised all his peremptory challenges, requested additional peremptory challenges, which was denied, and objected to the seating of venireperson Peace. *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986); *Harris v. State*, —— S.W.2d —— (Tex.Cr.App. No. 69,366 delivered June 28, 1989).

required by Art. 34.04 V.A.C.C.P. Appellant's *trial counsel* stated *he* received a list of venirepersons more than two weeks prior to commencement of trial. When the first venire was exhausted, an additional list of venirepersons was submitted and trial counsel was given a list of their names one day before trial.

Article 34.04 provides:

No defendant in a capital case shall be brought to trial until he shall have had at least two days (including holidays) a copy of the names of persons summoned as veniremen ... except where he waives the right or is on bail.... Where the venire is exhausted ... and additional names are drawn, the defendant shall not be entitled to two days service of the names additionally drawn....

Appellant argues that personal service of the first venire list was required to be delivered to him. This position is without merit. This Court has held:

[T]hat Art. 34.04 ... does not require personal service of the list upon an accused, and that sufficient compliance is evinced by delivery to the accused's counsel in sufficient time to prepare for trial. See *Brown v. State*, 496 S.W.2d 640 (Tex.Cr.App.1973).

*Chappell v. State*, 519 S.W.2d 453, 461 (Tex.Cr.App.1975). Appellant also asserts that he did not receive two days notice as to the second list of venirepersons. Although appellant is entitled to two days notice as to the initial list of veniremen, Art. 34.04 is explicit when it is written, "the defendant shall not be entitled to two days service of the names additionally drawn...." Appellant's fifth point of error is overruled.

■ In his third point of error, appellant contends the trial court erred in failing to grant his motion to quash the jury panel.[3] Appellant argues Art. 33.09, V.A.C.C.P.,[4] was violated because the same one

hundred and fifty veniremen who were called for his competency trial were also called for the trial on the merits in this cause. Testimony at the hearing on this motion revealed the sheriff and district clerk drew from a jury wheel the names of five hundred people to serve as prospective jurors for the entire term. The district clerk testified that each time a panel is needed for a trial the first one hundred and fifty or two hundred names on the list drawn from the jury wheel are selected for service. One hundred and fifty names were selected for appellant's competency trial and an additional fifty names were taken from the list for his jury trial. Ninety of those persons were not qualified for jury service for various reasons, and the twelve persons who served as jurors in the competency hearing were excused by the trial judge from the panel in the trial on the merits without objection from either the State or appellant. See Art. 46.02, § 4(a), V.A.C.C.P. Appellant presents no authority to support his contention that the trial judge erred in denying his motion to quash or that the jury panels were improperly impaneled. We find his contention is without merit. Point of error number three is overruled.

■ In a related point of error, number four, appellant claims the trial judge erred in failing to grant his challenge to the array pursuant to Art. 35.07, V.A.C.C.P. Appellant relies on the same argument he presented in his third point of error to support his claim in this point while also directing our attention to that portion of the record where he asserted the panel for this case was improperly impaneled because "jurors have been excused by individuals not allowed to excuse them, such as deputy clerks or other law enforcement officers." The trial judge overruled appellant's grounds for his challenge to the array. Appellant then asked the court to issue writs of attachment for the absent

---

**3.** Appellant labels this motion a Motion to Quash Special Venire, but he concedes in his brief this is a misnomer since a special venire was not called for this cause. Appellant asks us to consider this motion as one to quash the jury panel.

**4.** Article 33.09 provides "Jury panels, including special venires, for the trial of criminal cases shall be selected and summoned (with return of summons) in the same manner as the selection of panels for the trial of civil cases except as otherwise provided in this Code."

summoned jurors who were not excused by the court. The trial judge denied this request because it would cause undue delay.

In his brief, appellant restates these procedural facts and notes the trial judge excused the same jurors that he asked to be attached. The trial judge excused these five persons at a hearing when neither the State nor appellant was present. Appellant claims the excusal was contrary to Art. 35.03, V.A.C.C.P., and that he was harmed by the trial judge's action. This contention, however, is not one of the grounds supporting appellant's challenge to the array. We do not address the merits of this point of error because appellant's contention on appeal does not comport with the grounds he raised at trial. Nothing is preserved for review. Appellant's fourth point of error is overruled.

■ In his twelfth point of error, appellant asserts the trial court erred in admitting extraneous offenses contained in one of his written confessions. Appellant filed a pre-trial motion to suppress this confession on the basis of involuntariness. A hearing was held on the motion during trial outside the presence of the jury. At the conclusion of the evidence presented at the hearing the trial judge found appellant's confession was given "lawfully and voluntarily" and stated he would admit it into evidence. Appellant then asked the trial judge to strike from the confession two extraneous offenses, those being appellant's possession of five pounds of marihuana and a .357 Magnum, and argued these extraneous matters were "not so

closely related to the offense with which the defendant stands charged as to make as to make (sic) [them] admissible." The trial judge overruled this objection. The State subsequently offered the confession into evidence without further objection from appellant,[5] except he subsequently asked for a limiting instruction on the extraneous offenses in the jury charge. The State contends the extraneous offenses were admissible as "res gestae" of the offense.

■ It is axiomatic that extraneous offenses are inadmissible as proof of the defendant's guilt in the crime for which he is on trial, except for certain exceptions. In *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), reg'g. denied, this Court noted that one such exception is where the extraneous offense shows the context in which the criminal act occurred, i.e., the "res gestae" of the offense. An extraneous offense which comes within an exception to the general rule of exclusion, however, is not necessarily admissible. There must be a clear showing that the extraneous transaction (1) was committed by the accused, (2) is relevant to a material issue in the case, and (3) is more probative than prejudicial, for it to be admissible.[6] Before applying this test, we must determine whether the extraneous transactions delineated in appellant's confession were "res gestae" of the present offense and thus fall within an exception to the general rule of inadmissibility.

Appellant's confession, State's exhibit No. 45, contained several references to his

5. The State contends that on these facts appellant waived error, if any. We hold appellant properly preserved error. Article 40.09 6(d)(3), V.A.C.C.P. (repealed), effective at the time of appellant's trial, provided that:

When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence shall be admitted, then in that event such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of such objections being renewed in the presence of the jury.

Thus, appellant was not required to re-urge his objection. *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985). Moreover, this is not a case where the defendant affirmatively states "no

objection" when the controversial evidence is tendered for admission and thus waives error. See *James v. State,* 772 S.W.2d 84 (Tex.Cr.App. 1989), reh'g. denied.

6. This test for admissibility is often stated as merely a two-part test. See *Mann v. State,* 718 S.W.2d 741 (Tex.Cr.App.1986); *Turner v. State,* 754 S.W.2d 668 (Tex.Cr.App.1988); and *Moreno v. State,* 721 S.W.2d 295 (Tex.Cr.App.1986). In *Harris v. State* (Tex.Cr.App. No. 69,366 delivered June 28, 1989), slip op. at p. 26, we noted that "the first basic prerequisite necessary to warrant the introduction of an extraneous offense" is a clear showing by the State that the accused participated in the commission of the extraneous transaction.

possession of a .357 Magnum, but he complains in his brief of only the "occasion prior to the criminal act charged[.]" Appellant's confession covers a three day period and discusses his activity during that time with his cohort James McCann. On February 28, 1982, the two were traveling west from Fort Stockton to Oceanside, California, when they experienced car trouble and decided to walk to a rest stop in Van Horn. Appellant stated in his confession that he was armed with the .357 Magnum. The confession then details their attempts to repair McCann's car and their stay at a Holiday Inn before resuming their trip west the evening of March 1, 1982. The car again broke-down and appellant walked back to Van Horn to get help, taking a .38 revolver with him and giving McCann the .357 Magnum. The alleged offense occurred about four hours later. After commission of the offense, appellant went back to McCann's car (appellant was driving the victim's truck), picked up McCann, and transferred their belongings from McCann's Plymouth to the victim's truck. At this point in the confession appellant states he put about five pounds of marihuana in the truck and also put the .357 Magnum in a suitcase which he put in the truck. Appellant estimated it was 1:00 a.m. on March 2, 1982, when this occurred. The two were arrested shortly thereafter.

From even this cursory recitation of the facts, it is clear appellant was the perpetrator of both extraneous offenses. We cannot conclude, however, that the possession of the .357 Magnum, as initially referred to in the confession, was res gestae of the alleged offense. Appellant possessed this weapon at least twenty-four hours prior to the commission of the murder and robbery of the gas station attendant. It cannot be argued that appellant was engaged in one continuous criminal episode at this point which would connect the possession of the .357 Magnum to the alleged capital murder. This gun was not used by appellant when committing this offense, and there is no evidence that appellant intended to commit a capital murder when he first went toward Van Horn. We conclude the possession of the weapon was not res ges-

tae of the alleged offense. The trial court erred in admitting this extraneous offense into evidence through the admission of appellant's confession.

We reach the same conclusion as to appellant's possession of the marihuana. Arguably, appellant was in the midst of flight from commission of this capital murder when he transferred the marihuana from McCann's car to the stolen truck. Yet, that fact does not make this extraneous offense admissible as res gestae of the capital murder. The possession and transfer of the marihuana did not in any way facilitate appellant's escape from law enforcement or place the alleged capital murder in its immediate context. See *Rogers v. State*, 774 S.W.2d 247 (Tex.Cr.App.1989).

In point of error number eleven appellant argues the trial court erred in not allowing voir dire on the issue of probation. The record reflects qualification of the jury panel began on January 9, 1984, and individual voir dire began the next day. During voir dire examination of prospective juror Pauline Gilbreath, the eighteenth prospective juror, defense counsel questioned her regarding range of punishment, specifically probation. The State objected to the question, and the court sustained the objection, because appellant failed to file an application for probation prior to voir dire. On January 11, 1984, appellant filed his sworn application and asked to requestion Gilbreath on the issue of probation. The court overruled appellant's motion on the grounds the application was untimely filed and one juror had already been selected who was not voir dired on this point. The trial judge granted appellant a running objection on this issue throughout the voir dire process.

Bias against the range of punishment applicable by law is a proper area of inquiry during voir dire for challenges for cause and peremptory challenges. *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), cert. denied — U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573. There is no provision for probation of punishment upon conviction for capital murder under Art. 42.12,

§ 3g(a)(1)(A), V.A.C.C.P., but there is for the lesser included offense of murder. A defendant raises the issue of probation by timely filing an application for probation before trial begins. Art. 42.12, § 3a(a). Since appellant did not file his application prior to voir dire commencing, his application was untimely and probation was not an issue for the jury in this cause. *Mays v. State*, 726 S.W.2d 937, 947 (Tex.Cr.App. 1986), cert. denied 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020. We hold the trial court did not abuse its discretion by refusing to allow appellant to question the remaining veniremen about probation. Appellant's eleventh point of error is overruled.[7]

 In his final point of error, appellant submits the trial judge committed reversible error by failing to give the jury his specially requested instruction on murder which amounted to an instructed verdict of guilty of murder only. Appellant argues the indictment in this cause alleged murder, not capital murder, because of the allegation that appellant "intentionally and *knowingly* cause (sic) the death of the said [victim] in the course of committing the offense of Robbery, ..." (emphasis supplied). Appellant contends he was entitled to plead guilty to the offense charged, and actually did enter his guilty plea to the offense of murder several times, which was always overruled by the trial judge. In his objections to the jury charge, appellant requested the jury be instructed "to find the defendant guilty as charged in the indictment of murder". The trial judge denied this motion, too.

This Court has held that the inclusion of "knowingly" in an indictment charging capital murder does not render the indictment defective. *Castillo v. State*, 739 S.W.2d 280 (Tex.Cr.App.1987), cert. denied, — U.S. ——, 108 S.Ct. 2889, 101 L.Ed.2d 924; *East v. State*, 702 S.W.2d 606 (Tex.Cr.App. 1985), cert. denied, 474 U.S. 1000, 106 S.Ct. 418, 88 L.Ed.2d 368; and *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr.App.1979), reh'g de-

nied. The indictment in this cause, although not artfully drafted, adequately alleged capital murder, and the trial judge acted properly in submitting the charge on capital murder and denying appellant's requested instruction on murder. Appellant's fourteenth point of error is overruled.

Finding merit in appellant's sixth point of error, we accordingly reverse the judgment of the trial court and remand appellant to the custody of the sheriff of Culberson County to answer the indictment.

TEAGUE, J., not participating.

McCORMICK, P.J., and DUNCAN and BERCHELMANN, JJ., agree with the majority's disposition of point of error number six but do not join the dicta regarding the disposition of appellant's remaining points.

---

7. Of course, appellant may, prior to any retrial of this cause, *timely* file an application for probation. Art. 42.12, sec. 3a(a).