**Orlando GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–88–00620–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 17, 1990.

David Almaraz, Laredo, for appellant.

Rudy Gutierrez, Asst. Dist. Atty., Hebbronville, for appellee.

Before REEVES, CHAPA and BIERY, JJ.

OPINION

REEVES, Justice.

Appellant was indicted for sexual assault. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) and (B). He pled not guilty before a jury and was convicted and sentenced to twenty years in prison. On appeal he raises three points of error. We affirm.

In his first point of error appellant contends the trial court abused its discretion in continuing the final day of trial through the night, until the punishment verdict was reached at seven o'clock in the morning. Appellant argues that this extended session had an inherently coercive impact on the jury and thus denied him a fair trial.

The presentation of evidence in appellant's trial began on Tuesday, September 20, 1988. Trial days of normal length, beginning at approximately 9:30 a.m. and ending near 5:00 p.m., continued throughout the rest of the week. At the end of the day Friday the trial court informed the jury that they would be working late the following day. Trial resumed Saturday morning at 9:30 and was recessed for the day shortly after seven o'clock that night. In a bench conference the court instructed the attorneys to come prepared to work late on Monday, concluding, "We'll finish the case Monday, gentlemen." No similar instruction was given to the jury.

The defense rested at approximately 4:30 Monday afternoon. The state presented two rebuttal witnesses. Then in a bench conference the prosecutor informed the court that the State had subpoenaed two more rebuttal witnesses but was unable to locate them at the moment. Rather than waiting for those witnesses to be attached the prosecutor concluded, "I realize it's late and we are under some time constraints, Your Honor. At this time the State would close." Both sides closed before the jury. The trial court's docket sheet notes this occurred at 5:50 p.m.

The trial court instructed the jurors that, as he had warned them the previous day of trial, they would be working late. The court advised the jury to retire to the jury

room and place their supper orders with the bailiff.

A little more than an hour later a charge conference was held. Appellant's counsel said he would have liked more time to prepare objections but did not make a formal request for more time and did not obtain a ruling from the court. Appellant did make several objections to the charge, some of which were granted and some denied. He also made a request that the jury be sequestered from that point on, which the court granted. The following colloquy ensued:

MR. ALANIZ [appellant's counsel]: And that they be instructed that if a verdict can not be reached that they be properly quartered somewhere.

THE COURT: If a verdict can not be reached how can they be quartered?

MR. ALANIZ: They can't sleep on the floor judge [sic].

MR. PENA [appellant's other counsel]: He's got a valid point, Your Honor.

MR. ALANIZ: This is what we had in Houston.

THE COURT: Well Houston has a lot of money you know. If they can't reach a verdict fine I'll just dismiss the jury and declare a mistrial.

MR. ALANIZ: Is that in the record? To which we object.

THE COURT: To which you object if the jury can't find a verdict?

MR. ALANIZ: Reach a verdict within the period of time that you can afford.

THE COURT: I have no time restraints and no time limits on the jury.

MR. ALANIZ: Well ... we just don't want the jury pressured, Judge.

THE COURT: I'm not pressuring the jury.

MR. ALANIZ: Not by you but by instructions. If you don't return a verdict by so and so then—

THE COURT: [Counsel], of course not, you know better than that.

The charge conference continued off the record. At 10:10 p.m. appellant made his final objections to the proposed charge, some of which were granted. The charge

was read to the jury and both sides presented argument. The arguments began at approximately 11:45 p.m. and the case was submitted to the jury at 2:09 a.m. In his argument appellant's counsel urged the jurors, "... I remind you that it's getting late, you are tired, you feel like you can not give the time, ask the Court for some time to rest. Don't just go in there and say we are tired let's get it over with." However, the jury made no such request. They deliberated for more than two hours and returned a guilty verdict at 4:15 a.m.

Another bench conference was held. The trial court asked the attorneys if they wished to continue or to recess until "in the morning." Appellant's lead counsel chose the latter. The court then suggested letting the jury decide. Appellant's counsel again said, "I would rather come back myself. I'm just drained." The trial court seemed to agree, but when proceedings resumed before the jury the court asked the jurors whether they wished to continue to the punishment phase immediately or to return at 9:30 or ten o'clock that morning. The jurors retired to the jury room for discussion and sent back word that they wished to continue. When the jurors returned to the courtroom the court informed them further:

> ... Now ladies and gentlemen, maybe I was unfair with you in just letting you go make a decision. You know, we have to prepare the charge, we have to receive evidence, and it will be a long time before—more time that you are going to be here and I just wanted to be sure that you people are physically and mentally capable of staying all night to hear the rest of the punishment phase of the case or come back fresh tomorrow say tomorrow at 10:00 or 11:00 to give you enough time to rest. It's up to you really.
> FOREMAN: Do you want the [sic: to] stay?
> JURY: Yes.
> FOREMAN: We'll stay, Your Honor.

The record reflects that the jury was provided with coffee while the charge on punishment was prepared. The punishment phase of trial began at approximately 6:00 a.m. Only appellant testified, establishing his eligibility for probation. After brief arguments the case was submitted to the jury at approximately 6:45 a.m. The jury was out for about twenty minutes before returning with the maximum sentence, twenty years' imprisonment.

Appellant did not object at any point to proceeding with the trial.

■ Neither appellant nor the State cites any case addressing this issue, nor have we discovered any. By analogy both sides rely on cases dealing with the length of time a jury may be kept deliberating. *See, e.g. DeLuna v. State*, 711 S.W.2d 44, 47–48 (Tex.Crim.App.1986), and cases cited therein. The length of time the jury deliberates rests within the sound discretion of the trial court; absent an abuse of that discretion no error is shown.\* *Id.* at 48. We hold the same standard of review applies to the length of a trial day.

■ By further analogy, we hold that failure to object waives a claim of error of this nature. Generally even error of constitutional dimension may be waived by failure to object. *Little v. State*, 758 S.W.2d 551, 563 (Tex.Crim.App.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 328, 102 L.Ed.2d 346. Specifically, a claim that the trial court's action had a coercive effect on the jury is waived by failure to object. *Rodriguez v. State*, 500 S.W.2d 517, 518 (Tex.Crim.App.1973). In this case, appellant waived the error he now claims by failing to object to the continuation of the trial.

Furthermore, we do not find this error, if any, to be fundamental in nature; that is, that it denied appellant a fair and impartial trial. Appellant claims the long trial day must have coerced the jury to reach a hasty verdict of guilt so they could retire for the night, but the record does not support that claim. The trial court did not give the jury a time limit or inform them they would be held until they reached a verdict. The jury did not determine appellant's guilt with undue speed. They deliberated for more than two hours. Even after their verdict they expressed their will-

ingness to continue, into the punishment phase of trial.

Appellant could have supported the claim he now makes by affidavits from jurors attached to his motion for new trial, but he did not. *See, Garza v. State,* 630 S.W.2d 272, 273 (Tex.Crim.App.1981). In the absence of any evidence that the jurors reached their verdict because they felt coerced to do so, appellant has not demonstrated fundamental error. His point of error number one is overruled.

■ In his second point of error appellant contends the prosecutor committed reversible error by referring to appellant as an animal and a dog in argument to the jury. Disposition of this point of error requires a summary of the facts presented at trial.

The complainant of the sexual assault with which appellant was charged was a nineteen year old mother of two. She testified that she was walking home late one night when appellant and three of his friends abducted her into a car and took her to a nearby ranch where a cockfight was being held. The other three men went to a shed to watch the cockfight. Appellant kept the complainant in the car, where he held her hair, forced her head down, and penetrated her mouth with his penis, choking her.

One of the other men returned to the car and raped the complainant orally and anally. After he left appellant pulled her from the car and put her on the hood, where he began sexually assaulting her again. The complainant was screaming and telling him to stop. A man named Jose Briones appeared and fondled the complainant while appellant was sexually assaulting her.

Next, all the men in the shed, perhaps twenty, came outside and gathered around the hood of the car. Another of the men raped the complainant while at the same time appellant again penetrated her mouth with his penis. Then, "they started taking turns and then Lando [appellant] would come back and—" "They would rape me one after the other ... Sometimes it was two at the same time." Some of the men, including appellant, held the complainant down while others raped her. While this was going on she heard laughing and talking. No one except Briones, who told the men to stop, responded to her pleas for help.

Two eyewitnesses corroborated the complainant's testimony. One was Jose Briones, who initially joined in the assault by fondling the complainant, but then, when all the other men arrived, told everyone to stop. Except for being threatened with a beating if he interfered, Briones was ignored. He saw a "whole bunch" of the men, including appellant, sexually assault the complainant. "They were just like dogs there," Briones testified. He also said, "They were animals then."

A twelve year old named Ricky also witnessed the group sexual assault and testified to it at trial. His testimony was similar. He saw the complainant being sexually assaulted by many men, including appellant. The spectators shined a flashlight onto the hood of the car in order to see better. The complainant screamed and cried and eventually passed out. No one but Briones told the men to stop. No one tried to help the complainant.

The complainant's husband was called as a defense witness in an attempt to show that the complainant had fabricated her story out of fear of her husband. The husband testified that usually he walked his wife home at nights because she was afraid of "animals like him," referring to appellant.

Following the presentation of evidence on guilt-innocence, the first prosecutor began his jury argument by pointing out appellant:

> ... Now, Orlando Garza is this man here sitting behind or hiding behind these two attorneys and described by Mr. Briones as a dog on the night of March 27th of 1988.

There was no objection. Appellant also complains under this point of error of other prosecutorial arguments, such as the following by the second prosecutor during the State's final argument. The prosecutor was responding to an argument by appel-

lant's counsel and explaining why Jose Briones had come forward to testify when none of appellant's other co-defendants had:

> Well fortunately one of them came forward. Payo Briones. He's not the smartest guy in the world. He's got the mentality of a child. Probably no better than or no smarter than Ricky. But he did come forward and he told you the truth. Do you know why? Because he was too dumb to keep his mouth shut like the rest of these guys, like the rest of the animals.

There was no objection to this argument. In context it is clear this argument referred not to appellant but to his co-defendants who had kept silent rather than testify. Appellant did testify in his own defense.

Appellant complains of another prosecutorial argument concerning "dogs and jackals and hyenas and ostriches that stick their heads in the sand ..." This also appears to refer to the witnesses to the sexual assault who chose not to testify, rather than to appellant. However, the last argument which appellant contends constituted reversible error unquestionably referred to appellant himself:

> There are all kinds of animals. That night there was a pack of dogs, wild dogs. And Orlanda Garza was the head dog. He's the one that brought the meat.

Again, appellant did not object to this argument.

Proper jury arguments include summation of the evidence presented at trial and reasonable deductions from that evidence. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988). Appellant contends that the prosecutors' references to appellant as an animal and a wild dog were not summations of the witnesses' testimony because the witness Jose Briones had not referred specifically to appellant in those terms; he had referred only to the whole group of men involved in the sexual assault. However, we reject this conclusion. It is clear from Briones' testimony that he was including appellant in his characterization of the men as animals and dogs. Certainly the complainant's husband was referring to no one but appellant when he mentioned "animals like him."

The arguments were reasonable deductions from the evidence. In *Burns v. State,* 556 S.W.2d 270 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 the evidence showed that the defendant and others brutally beat the victim to death. The Court of Criminal Appeals, addressing the defendant's claim that the prosecutor had reversibly erred by referring to the defendant as an animal, held:

> ... the record in the instant case reflects a 'bestial aspect.' While the cases may be rare where the evidence justifies a prosecutor in referring to a defendant as an 'animal,' we find that the use of such term was warranted in the instant case and not an improper deduction from the evidence.

Appellant's is another such rare case. The evidence showed appellant was the leader of a group of men who brutally attacked the complainant, with no human concern for the victim's plight. We find the prosecutors' arguments reasonable deductions from the evidence.

Finally, even if error, the arguments were not so extreme or manifestly improper as to require reversal. *Norwood v. State,* 737 S.W.2d 71, 74 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). The potential for harm in the arguments could have been cured by instructions to disregard if appellant had requested such instructions. *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim.App.1985). Appellant's second point of error is overruled.

■ In his third and final point of error appellant contends that the prosecutor reversibly erred during his jury argument on punishment by asking the jury to assess punishment based on the expectations of the community. We disagree. The prosecutor prefaced the argument in question by pointing out that one of the beneficial effects of punishing a defendant is deter-

rence of others who might be tempted to commit similar crimes:

> You have an opportunity not only to assess punishment in this particular case but to send a message to other people, to the community, to other defendants, to other people who do not have any respect for the law. You can send two messages. You can say go ahead and break the law, nothing is going to happen to you. We hear that all the time. That's what most people think. Or you can send a message that the people of Duval County will not tolerate this type of animal behavior.

There was no objection to this argument. We find the argument was a proper plea for law enforcement. The argument did not, as in, *e.g.*, *Cortez v. State*, 683 S.W.2d 419 (Tex.Crim.App.1984), assert to the jury that the community expected a certain punishment. The prosecutor instead urged the jurors to send a message *to* others in the community. This was not error. *Goocher v. State*, 633 S.W.2d 860, 864–65 (Tex.Crim. App.1982); *Lugo v. State*, 732 S.W.2d 662, 664–65 (Tex.App.—Corpus Christi 1987, no pet.). Appellant's third point of error is overruled.

Having found no reversible error, we affirm the judgment of the trial court.