**Nathaniel HAWKINS Jr., Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. 11–06–00309–CR.**

Court of Appeals of Texas,
Eastland.

Sept. 4, 2008.

Rehearing Overruled Oct. 23, 2008.

Kurt M. Noell, Tyler, Oscar William Loyd II, Gilmer, for appellant.

Matt Bingham, Dist. Atty., Tyler, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

The jury convicted Nathaniel Hawkins Jr. of the offense of aggravated sexual assault. The jury also made an affirmative finding regarding a deadly weapon allegation and assessed Hawkins's punishment at confinement for life. We affirm.

On appeal, Hawkins maintains in his first issue that the trial court erred when it denied his motion for mistrial made after a juror informed the trial court that the juror had just learned (from the testimony) that a hammer and mask had been found behind his house during the investigation of this offense. In his second and final issue on appeal, Hawkins claims that his trial counsel afforded ineffective assistance of counsel in some fourteen named

instances. The State has chosen not to favor us with a brief and has, therefore, confessed error. We are required, however, to make an independent examination of the merits of the issues presented for review. We are limited in that examination to the arguments advanced in the trial court. *Saldano v. State,* 70 S.W.3d 873, 884 (Tex.Crim.App.2002); *Isham v. State,* 258 S.W.3d 244 (Tex.App.–Eastland 2008, pet. filed).

There is no attack on the legal or factual sufficiency of the evidence. However, we believe that a brief summary of the evidence is necessary.

The testimony shows that, within less than one hour after the twenty-year-old victim had opened her place of employment at 8:00 a.m. for the day's business, she was threatened and sexually assaulted, both orally and vaginally, and that police officers had Hawkins in custody for committing the crimes. The victim called 9–1–1 and reported the crime at 8:34 a.m.; Hawkins was arrested at 8:43 a.m. while the victim was still talking to the 9–1–1 officer. Hawkins was arrested in close proximity to the place where the assault took place and was wearing the same clothing that the victim said that he was wearing at the time of the attack. The police found a hammer and a black nylon stocking in close proximity to the place of the attack and the place where the police arrested Hawkins. The victim had reported that her assailant was wearing black hosiery over his face and had a hammer with which he threatened her as he made her go into a storage room, remove all of her clothing, and forced her on her knees as he penetrated her first orally and then vaginally. Hawkins threatened to kill her if she told. He also told her to act like she liked it. The victim testified that, when Hawkins heard the sound of an ice machine dumping ice, he must have thought

that someone was coming in. The victim escaped to a bathroom, and Hawkins left.

The victim positively identified Hawkins as the man who threatened and sexually assaulted her. Various types of materials and substances for DNA testing were gathered from the victim as well as from Hawkins by police and by a sexual assault nurse examiner. This DNA testing positively connected Hawkins to the sexual assault.

After a lunch break, the trial court's bailiff informed the judge that one of the jurors had something that he needed to tell him. The trial court instructed the bailiff to tell the juror to put what he wanted to say in writing. The juror wrote a note to the trial court that read:

> Dear Judge, I live at 201 North Hearon. I didn't know that Whitehouse police found a hammer and mask at my address until this morning in your courtroom. Nobody talked to me at any time this past year about it. Thanks.

■ Maintaining that, because the juror would have personal knowledge of the facts of the case, Hawkins's attorney moved for a mistrial. The trial court overruled the motion. On appeal, Hawkins argues that he was denied a fair and impartial jury as "guaranteed by the Sixth Amendment of the United States Constitution, as well as Article I, § 10 of the Texas Constitution," and that Tex.Code Crim. Proc. Ann. art. 35.16(a)(6) (Vernon 2006) provides that a person is subject to a challenge for cause if he is a witness in the case.

■ When a trial court denies a motion for mistrial, we review that denial for an abuse of discretion. *See Hawkins v. State,* 135 S.W.3d 72, 76–77 (Tex.Crim.App.2004). Only highly prejudicial and incurable errors will necessitate a mistrial. *Simpson*

*v. State,* 119 S.W.3d 262, 272 (Tex.Crim. App.2003).

■ While one is entitled to challenge a potential juror for cause if that person is a witness in a case, such a person is not disqualified to serve as a juror. *See* Tex. Gov't Code Ann. § 62.102 (Vernon Supp. 2007). One of the cases upon which Hawkins relies is *Petrey v. State,* 158 Tex.Crim. 658, 258 S.W.2d 808 (1953). There, Lemke was a compurgator on a change of venue affidavit. He was also a witness at the hearing on the motion for change of venue. He had talked to the defendant after the charges of rape had been filed against the defendant. Lemke had also contributed money to help pay for the defendant's attorney's fees. The trial court granted the state's challenge for cause against Lemke. The Court of Criminal Appeals found no error. *Petrey,* 258 S.W.2d at 809.

Another case upon which Hawkins relies is *Rubenstein v. State,* 407 S.W.2d 793 (Tex.Crim.App.1966). *Rubenstein* is the "Jack Ruby" case (shooting of Lee Harvey Oswald). There, service of witnesses as jurors is discussed in a concurring opinion where it was recognized that ten persons on the jury had actually seen the shooting on television.

*Wyle v. State,* 777 S.W.2d 709 (Tex. Crim.App.1989), is another case upon which Hawkins relies. In *Wyle,* the defendant was charged with capital murder. Potential Juror Shotwell had been called to the scene of the crime by someone in the sheriff's office. As the director of the only funeral home in the county, Shotwell was obliged to remove the body. He was at the scene for a couple of hours and saw the body of the victim as well as the blood at the scene. Shotwell visited with the officers while at the scene of the crime because he knew all of those who were investigating the crime. He also transported the body to the medical examiner's office.

Shotwell had also directed the funeral services for the victim. He was a witness at a hearing to transfer venue of the case. The trial court overruled appellant's challenge for cause. *Wyle,* 777 S.W.2d at 711–12. The Court of Criminal Appeals held that the trial court erred when it overruled the challenge because it should have been apparent that Shotwell was a witness in the case.

The case before us is distinguishable from those relied upon by Hawkins. In those cases, the record contained evidence that clearly showed that the potential jurors were witnesses. Here, the juror did not even know that the hammer and the black hosiery had been found behind his house until the officer testified that the items had been found there. Further, there is nothing in the record beyond mere conjecture as to what the juror knew about the case, if anything.

The final case upon which Hawkins relies in support of this issue is *Reyes v. State,* 30 S.W.3d 409 (Tex.Crim.App.2000). *Reyes* dealt with the issue of completion of a trial with eleven jurors when one juror became disabled after the trial had started. *See* Tex.Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp.2007). The case involved a juror's mental condition or emotional state. No such evidence is presented here.

Hawkins has not shown that the trial court abused its discretion when it denied the motion for mistrial. We overrule the first issue on appeal.

Hawkins asserts in some fourteen instances that he received ineffective assistance from his trial counsel. In order to prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the

result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mallett v. State,* 65 S.W.3d 59, 62–63 (Tex.Crim.App.2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999).

The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). An appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State,* 877 S.W.2d 768 (Tex.Crim.App.1994); *Hayden v. State,* 155 S.W.3d 640, 648 (Tex.App.–Eastland 2005, pet. ref'd). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson,* 9 S.W.3d at 814 (quoting *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996)).

■ Generally, the record on appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions.

*Johnson v. State,* 614 S.W.2d 148, 152 (Tex.Crim.App.1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson,* 877 S.W.2d at 771.

■ Hawkins first assails his trial counsel's conduct in that she did not object when the State read the indictment during its voir dire examination of the jury panel. Hawkins relies upon TEX.CODE CRIM. PROC. ANN. art. 26.11 (Vernon 1989), art. 36.01 (Vernon 2007) for the proposition that these are the only provisions that allow for the reading of the indictment. We hold that neither prohibits the reading of the indictment. Rather, Article 26.11 provides for one step in the arraignment process, and Article 36.01 simply provides for the order of a trial. Neither contain a prohibition against the reading of the indictment as a part of the voir dire process (except that prior convictions used for enhancement are not to be read until the punishment phase of the trial). *See* Article 36.01(a)(1). Hawkins has not established that his trial counsel provided ineffective assistance to him when she did not object to the prosecutor's reading of the indictment during voir dire examination of the jury panel.

■ Hawkins next complains that his trial counsel was ineffective when she failed to object to a "commitment question" asked by the prosecutor during voir dire. The question was: "[W]ho here thinks DNA is reliable?" The question was almost immediately changed to: "Who here thinks DNA is unreliable?" It is impermissible to attempt to bind or to commit a prospective juror to a verdict based upon a hypothetical set of facts. *Standefer v. State,* 59 S.W.3d 177, 179 (Tex.Crim.App.2001). A commitment question is one by which a prospective juror commits to resolve, or to refrain

from resolving, "an issue a certain way after learning a particular fact." *Id.* The question must first seek a commitment from the prospective juror. The question asked by the prosecutor in this case did not seek a commitment in that the prospective jurors were not being asked to bind themselves "to a verdict based on a hypothetical set of facts." *See id.* Hawkins's trial counsel did not have a valid objection to the questions asked. Hawkins has failed to establish that he was afforded ineffective assistance by his trial counsel when she did not object to those questions.

◼ Hawkins apparently takes exception to the fact that his trial counsel did not file a *Daubert*[1] motion regarding the testimony of Jody Hrabal, the State's DNA expert, and the testimony of a forensic chemist called by the State to testify regarding casting of shoe prints found near the scene of the crime. Hawkins does not tell us what information would have been uncovered by filing such a motion or what the effect of such a motion might have been. Further, Hawkins does not provide us with any evidence of the reasoning behind trial counsel's conduct. Absent such, we cannot conclude that trial counsel's performance was deficient. *Isham,* 258 S.W.3d 244. Conjecture will not overcome the presumption that trial counsel's conduct was reasonable. Counsel and the trial court held a bench conference during which the court mentioned that trial counsel already had all of the DNA expert's materials. Hawkins has not met his burden to show that his attorney rendered ineffective assistance of counsel when she did not file a *Daubert* motion with regard to these two witnesses.

The State did not designate as a witness the forensic chemist who testified regarding the shoe prints. Trial counsel did not object. Trial counsel did not object under TEX.R. EVID. 702, either. Hawkins takes issue with both failures. Again, we have not been presented with anything to show what would have been discovered, or what object would have been achieved, by making these objections. Hawkins has not met his burden to overcome the presumption that trial counsel's representation was reasonable.

◼ Hawkins asserts that his trial counsel also offered him less than effective assistance when she did not object to a portion of Hrabal's testimony. Hrabal testified that she was a forensic DNA analyst supervisor. An analyst under her supervision performed DNA testing of a shirt Hawkins was wearing at the time of the assault; the results of that testing revealed a perfect mixture of Hawkins's DNA and the victim's. Hawkins claims that his trial counsel failed to provide him with effective assistance when she did not object when the State did not lay a proper predicate, she did not make a hearsay objection, she did not assert his right to confrontation, and she did not make an effort "under standards reflected in *Cole v. State,* 839 S.W.2d 798 (Tex.Crim.App.1990) and *U.S. v. Oates,* 560 F.2d 45 (2nd Cir. 1977), as to the evidence not fitting within or into any exception to the hearsay rule, and in fact, in the trial of this cause, no proper predicate was laid." Hawkins has not pointed out in what particulars the State failed to lay a proper predicate, how the testimony did not fit into any exception to the hearsay rule, and exactly what "efforts" trial counsel failed to make under generalized "standards" referred to by Hawkins. Again, Hawkins makes broad,

---

1. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

general statements and does not refer us to evidence by which he overcomes the presumption that his trial counsel rendered reasonably effective assistance to him. These alleged failures have not been shown to have resulted in rendition of ineffective assistance to Hawkins.

 Hawkins next makes two general claims aimed at his trial counsel's failure to call the DNA expert which had been appointed to perform tests on behalf of Hawkins. It has not been shown to what that expert would have testified. There is nothing in this record or in Hawkins's argument to overcome the presumption that trial counsel rendered Hawkins reasonable professional assistance in this regard.

Hawkins faults his trial counsel for not filing a motion to suppress. He then makes the comment "although there were discussions with regard to the extensive media coverage of this crime had early in the trial of this cause." Hawkins has waived any error under this part of his presentation. TEX.R.APP. P. 38.1(h). The same is true of Hawkins's general statement, without more, that charge errors were made. *Id.*

Next, Hawkins assails his trial attorney for not cross-examining the victim. It seems that his main argument is related to identification: that the victim was able to identify him because she was still talking to the 9-1-1 operator when she was told by the operator that "I think they have him." Hawkins has not presented us with anything to rebut the presumption that the decision not to cross-examine the victim was sound trial strategy. Therefore, Hawkins has not overcome the presumption that trial counsel's decision not to cross-examine the victim resulted in his receiving ineffective assistance of counsel.

 Hawkins claims that his trial counsel should have called character witnesses. Again, we are not provided with any evidence that such testimony does or does not exist or with what that evidence would have been if offered. Hawkins has not been shown that trial counsel was ineffective for failing to present character evidence.

 Hawkins further attacks the representation afforded him because of trial counsel's failure to object to the State's argument in which it called Hawkins a coward. The argument was not objectionable because it was proper as a reasonable deduction from the evidence. The Fort Worth Court of Appeals, in holding that an argument that the appellant there was "the biggest coward that walks the face of the earth," has recognized that Texas courts have upheld arguments calling a defendant an animal, a fool, vicious, a liar, a dog, a cold-blooded killer, a jerk, a troublemaker, and a one-man crime wave and contending that a defendant "has no conscience, no heart, no recognition of right or wrong [and is] perched on the rim of hell, looking deep into it" as reasonable deductions from the evidence in light of the facts of each case. *Kennedy v. State,* 193 S.W.3d 645, 657 (Tex.App.–Fort Worth 2006, pet. ref'd) (citing *Belton v. State,* 900 S.W.2d 886, 898 (Tex.App.–El Paso 1995, pet. ref'd); *Vitiello v. State,* 848 S.W.2d 885, 888 (Tex.App.–Houston [14th Dist.] 1993, pet. ref'd); *Ledesma v. State,* 828 S.W.2d 560, 563 (Tex.App.–El Paso 1992, no pet.); *Adams v. State,* 813 S.W.2d 698, 700–01 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd); *Garza v. State,* 783 S.W.2d 796, 800 (Tex.App.–San Antonio 1990, no pet.); *Varvaro v. State,* 772 S.W.2d 140, 144 (Tex.App.–Tyler 1988, pet. ref'd); *Cates v. State,* 752 S.W.2d 175, 177 (Tex.App.–Dallas 1988, no pet.)). Hawkins has not shown that his trial counsel rendered inef-

fective assistance when she did not object to the State calling him a coward.

Hawkins asserts that his trial counsel was ineffective because she failed to object when the prosecutor made the statement: "Did you see her [the victim] get cross-examined on one inconsistency? No." He also argues that the prosecutor's argument that "DNA can set you free" was improper. Hawkins's claim that these arguments are improper comments on his failure to offer evidence to contest that he committed this crime is incorrect; they are reasonable deductions from the evidence. Hawkins has failed to show that trial counsel's legal assistance to him was ineffective for failure to object to these two comments by the prosecutor.

Hawkins refers to various places in the record where he claims his trial counsel's failure to object to improper arguments resulted in his being accorded ineffective assistance of counsel. We have reviewed each of these general comments and the record to which reference is made and cannot match the objection with the content of the record. For instance, we are referred to Volume No. Five, pages 155–156 in connection with a claim that the argument constituted a comment on Hawkins's failure to testify. There is no comment on Hawkins's failure to testify in that portion of the record. The prosecutor makes reference to a statement made by trial counsel during her opening statement when she told the jurors to be sure to listen to what they did not hear. The prosecutor then argues that what trial counsel was trying to do was to send them "to the jury room with the unsubstantiated idea that there is something that you should have heard but didn't." This is not a comment on Hawkins's failure to testify. Hawkins has not shown that trial counsel rendered ineffective assistance when she did not object to it. The same is true as to

Hawkins's claims that the prosecutor improperly argued that Hawkins did not offer any evidence to contest his commission of the crime, that he expressed no remorse, and that he had no consideration for the victim. Further, the issues regarding remorse and consideration for the victim are logical deductions from the evidence. *See Kennedy,* 193 S.W.3d at 657. Hawkins has not shown that he received ineffective assistance of counsel in connection with these issues.

Hawkins maintains that his trial counsel should have objected to improper jury argument during the punishment phase of the trial. Although Hawkins directs us to two pages of the reporter's record, he does not tell us specifically what part of those two pages are the object of his claim that the argument was an improper appeal to community expectations. We have reviewed the argument on those two pages of the record and find that the prosecutor did not engage in improper jury argument. He asked the jury to let people know that, if a person committed this type of crime in Smith County, "[y]ou're going to get life." He asked them to send a message to people like Hawkins, and he also asked them to assess punishment at life. In *Goocher v. State,* 633 S.W.2d 860, 864 (Tex.Crim.App.1982), the prosecutor argued, "I am asking you to enforce it. I'm asking you to do what needs to be done to send these type of people a message to tell them we're not tolerating this type of behavior in our county." The court held that this argument was proper because it was not "an unsworn assertion by the prosecutor, as to the expectations or demands of the community for a particular result." *Goocher,* 633 S.W.2d at 864–65. An argument is a proper plea for law enforcement if it asks the jury to be the voice of the community, instead of asking it to lend its ear to the

community. *Cortez v. State*, 683 S.W.2d 419, 421 (Tex.Crim.App.1984). Because here, the argument was not an appeal based upon unproven sentiments of the community, the argument was proper. Hawkins has not met his burden to show that he was afforded ineffective assistance of counsel for failure of his trial counsel to object to this argument.

▮ Hawkins also complains that his trial counsel was ineffective when she failed to object when the trial court entered its judgment that a deadly weapon was used in the commission of the offense when that issue was not submitted to the jury. To the contrary, the jury found that Hawkins was guilty of aggravated sexual assault as charged in the indictment. If an indictment alleges that the offense was committed by using a deadly weapon, then a jury makes an affirmative finding when it finds that the defendant is found guilty "as charged in the indictment." *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App. 1985). That is the case here, and Hawkins has not shown that his trial counsel afforded him ineffective assistance in this regard.

▮ Trial counsel waived argument in the guilt/innocence phase of this trial. Hawkins claims that shows that his trial counsel did not know the law because she apparently thought, mistakenly, that the State could not then argue further because there was nothing for it to rebut. Assuming that there was such a mistake by trial counsel, in view of the overwhelming evidence of guilt in this case, Hawkins still has not satisfied the second prong of the *Strickland* test: that there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficient performance. *See Strickland*, 466 U.S. at 693–94, 104 S.Ct. 2052.

The record reflects that Hawkins was ably represented by his trial counsel. She properly participated in pretrial discovery, engaged in voir dire of the jury panel, and made many successful challenges for cause. She made appropriate objections during the trial and conducted cross-examination as was appropriate. Trial counsel was presented with evidence that showed that the victim was sexually assaulted and that a deadly weapon was used during the assault. Appellant was located in the near vicinity of the place where the victim was assaulted, and he was wearing clothing that was described by the victim. A hammer and black hosiery was used during the commission of the crime, and the place where Hawkins was arrested was in the near vicinity of the place where those items were found. Lab results conclusively proved that the victim's DNA was located on pieces of Hawkins's shirt and underclothing. Hawkins has not met his burden to show, upon this record, that trial counsel ineffectively represented him.

With the possible exception of the matter involving waiver of jury argument, Hawkins has not shown that trial counsel's performance fell below an objective standard of reasonableness. On the issue of waiver of jury argument, Hawkins has not shown that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Id.* All of Hawkins's complaints regarding ineffective assistance of counsel have been considered, and each is overruled.

We affirm the judgment of the trial court.