11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Charles Earl Jackson

Appellant

Vs.                   No.  11-00-00282-CR B Appeal from Comanche County

State of Texas

Appellee

 

The jury
convicted appellant of murder, and the trial court assessed his punishment at
confinement for 45 years.  We affirm.

In his
eighth issue on appeal, appellant argues that the evidence is factually
insufficient to support his conviction. 
In deciding whether the evidence is factually sufficient to support the
conviction, we must review all of the evidence in a neutral light favoring
neither party to determine if the verdict is so against the great weight of the
evidence as to be clearly wrong and unjust. 
Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Clewis v. State, 922
S.W.2d 126 (Tex.Cr.App.1996).  We review
the fact finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State,
supra.  Due deference must be given to
the jury=s determination, particularly concerning the
weight and credibility of the evidence. 
Johnson v. State, supra; Jones v. State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den=d, 139 L.Ed.2d 54, 118 S.Ct. 100, 522 U.S. 832 (1997).  This court has the authority to disagree
with the fact finder=s
determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ 
Johnson v. State, supra at 9.








Mark Wayne
Sides, the victim=s son,
testified at trial that appellant and his mother had lived together for
approximately two years.  Sides stated
that on December 21, 1999, he went to the victim=s house and that she had packed appellant=s clothes.  Sides and the victim
had planned to put appellant=s clothes in the living room and leave the house.  Sides then intended to call appellant when
appellant arrived at the house and tell him to take his things and leave.  Sides testified that appellant arrived at
the house earlier than expected.

Sides
stated that, when appellant arrived, Sides told him to get his things and
leave.  Sides testified that appellant
turned and walked out of the house, went to his truck, and got a gun.  Appellant put the gun to his head and said
that he was Agoing to just end it right there.@ 
Sides Atried to talk [appellant] out of it@ and told him to put the gun down.  Appellant told Sides:  A[I]f I can=t have
[the victim] there ain=t no -
- there=s no other son of a b---- going to have her.@ 
Appellant then turned the gun on Sides. 
Sides testified that the victim was standing by the door leading into
the house and that appellant began pointing the gun at Sides and the
victim.  Appellant told the victim that
he wanted to get married. 

Sides
testified that the victim told appellant to put the gun down and to come into
the house and talk.  Sides stated that
he and the victim went into the house and that, when appellant went into the
house, he still had the gun.  When she
saw that appellant still had the gun, the victim told him to get out of the
house with the gun.  Appellant told the
victim Alet=s go get married right now.@  Appellant turned to go out of
the door; and the victim followed him, but she did not go out into the garage.

Sides
testified that he retrieved a gun that was laying on the bar stool and followed
them.  When he saw that appellant was
out in the garage, Sides went through the door, raised his gun, and pulled the
trigger.  Sides stated that the gun
misfired and that appellant then turned around and shot him.  Sides testified that appellant shot him
twice in the leg, once in the abdomen, and once in the shoulder.  Sides further testified that he saw
appellant point his gun toward the door where the victim was standing and shoot
in that direction. 








Appellant
testified at trial that, a few days before the offense, the victim had told him
that she was seeing someone else.  They
agreed that appellant would move out of the house after the holidays.  Appellant stated that, on the morning of the
offense, he was very upset over the relationship ending and that he felt that Athere wasn=t any - - anything left to live for if [he] didn=t have [the victim].@ 
Appellant said that he then went out to his pickup, got his pistol, came
back into the house, and told the victim that he was going to Aput an end to [his] life.@  The
victim told appellant to calm down and that they would have breakfast and talk
about the relationship.  Appellant and
the victim ate breakfast together and planned a birthday celebration for the
victim that night.  Appellant then left
for work. 

Appellant
testified that he left work early because he was going  to Acook out@ for the victim=s birthday.  When he arrived at
the house, Sides was there.  Appellant
testified that he entered the house through the garage and that Sides
confronted him and told him not to go in the house.  Sides told appellant that the victim was packing appellant=s clothes and that appellant would have to
leave. 

Appellant
testified that he went out to his pickup and that, as he opened the door, he
decided Ait wasn=t worth living without [the victim].@  Appellant then got his gun and
put it to his head.  Sides pleaded with
appellant not to shoot himself; and appellant told Sides:  AThe only thing that=s worth anything is I want to marry [the victim].@ 
Appellant also told Sides: AIf she doesn=t want
me to shoot myself, then that=s what=s going to have to happen.  We are going to get married and get on with
our life.@ Appellant said that he and Sides started
going into the house and that, when the victim saw that he had a gun, she told
him he could not come into the house with a gun.  Appellant testified that he hid the gun behind his back and that
he told the victim:  AThe only way we=re not going to do it, we are going to stop all of this nonsense, we
are going to go get married now, no more talking, we are going to do it.@ Appellant stated that the victim agreed to
marry him and that he turned and walked to the door with the victim following
him.  As he was walking toward his
pickup, appellant heard Aclick, click@ and
turned and saw Sides pointing a gun at him. 
Appellant testified that he then began shooting at Sides and that, while
he was trying to get behind a brick wall, he was shot in the shoulder by Sides.
Appellant testified that he fired until his gun was empty but that he did not
fire shots at the victim. 

Appellant
stated that, when his gun was empty, he went to his pickup to get away.  Appellant said that he was going to
Brownwood to see a police officer when he heard a radio broadcast that the
police were looking for him and that he was Aarmed and dangerous.@  Appellant then got scared and
wanted to get out of the country. 
Appellant went to Kansas, Nebraska, and then to Florida where he was
arrested.








Appellant
specifically argues that the evidence is factually insufficient to support his
conviction Ain light of the overwhelming evidence of
self-defense or manslaughter or criminally negligent homicide.@  The
jury heard evidence that appellant went to his pickup, retrieved a gun, and
held the gun on Sides and the victim. 
The jury also heard evidence that, after he shot Sides, appellant raised
the gun in the direction of the unarmed victim and fired.  The victim was shot twice, once in her neck
and once in her stomach, and she did not have a pulse at the time police
arrived. After reviewing all of the evidence in a neutral light favoring
neither party, we hold that the jury=s verdict is not so against the great weight of the evidence as to be
clearly wrong and unjust.  Appellant=s eighth issue is overruled.

In his
first issue on appeal, appellant contends that the trial court erred in denying
his motion for change of venue.  We
review the trial court's decision denying appellant a change of venue under an
abuse of discretion standard, and the trial court's decision concerning venue
will not be disturbed so long as it was within the realm of reasonableness
given the facts presented to the trial court. Powell v. State, 898 S.W.2d 821
(Tex.Cr.App.1994), cert. den=d, 133 L.Ed.2d 431, 116 S.Ct. 524, 516 U.S. 991 (1995).  A change of venue may be granted if there
exists in the county where the prosecution is commenced so great a prejudice
against a defendant that he cannot obtain a fair and impartial trial.    TEX. CODE CRIM. PRO. ANN. art. 31.03(a)(1)
(Vernon 1989). 

At the
hearing on appellant=s
motion for change of venue, appellant presented the testimony of two attorneys
who stated that appellant could not get a fair trial in Comanche County.  One of the attorneys stated that he had
heard talk in the community about the case and that people had formed opinions
on appellant=s guilt based upon newspaper reports. Wayne
Knowles, a private investigator, also testified at the hearing that appellant
would not receive a fair trial in Comanche County.  Knowles stated that he had talked to 25 or 30 people in the
community about the case and that a majority of them thought appellant was
guilty.   Knowles supplied the trial
court with various newspaper articles covering the case.   Appellant also presented the testimony of
two other members of the community who believed that appellant would not
receive a fair trial. 








The trial
court also heard evidence from representatives from three local
newspapers.  The representatives
authenticated articles appearing in their respective newspapers concerning the
case.  Appellant argues that these
articles contain misleading or inaccurate accounts about the case.  From these representatives, the trial court
heard testimony that the case was not a Ahot topic@ at
the time and that the articles were not prejudicial toward appellant or
intended to be inflammatory.  The trial
court heard testimony that two of the newspapers were not widely circulated
throughout the entire county.  One
representative testified that she believed appellant could have a fair trial in
the county.    During voir dire, the trial court excused 24 potential jurors who
indicated that they could not render a fair and impartial verdict.  The remaining 52 potential jurors were
examined extensively about their knowledge of the case and about their ability
to render a fair verdict.  Although many
of the potential jurors were familiar with the case, each one indicated that he
or she could render an impartial verdict. 


Extensive
knowledge in the community of either the crime or the defendant, without more,
is insufficient to render a trial unconstitutional. Moore v. State, 935 S.W.2d
124, 129 (Tex.Cr.App.1996), cert. den=d, 137 L.Ed.2d 835, 117 S.Ct. 1711, 520 U.S. 1219 (1997).  Publicity about the case must be pervasive,
prejudicial, and inflammatory.  Moore v.
State, supra.  Although the record
indicates that the case was discussed in the community and that there were
numerous articles covering the case, appellant did not show such a prejudice in
the community that he could not receive a fair and impartial jury.  Powell v. State, supra.  The trial court did not abuse its discretion
in denying appellant=s motion
for change of venue.  Appellant=s first issue on appeal is overruled.

In his
second issue on appeal, appellant argues that the trial court erred in denying
his motion for funds for an expert witness. 
Appellant sought an expert to survey the community and to provide
additional evidence in support of his motion for change of venue.  








The record
shows that the trial court authorized funds for an investigator to assist in
appellant=s defense. 
Knowles testified at the hearing on appellant=s motion for change of venue that he
discussed appellant=s case
with members of the community to assess their feelings about the case.  Appellant also offered numerous newspaper
articles about the case, as well as testimony from members of the community.  Statistical surveys concerning community
sentiment are not required to be introduced at a hearing on a motion to change
venue, and the expense for a survey is not required to be paid for by the
State.  Wyle v. State, 777 S.W.2d 709
(Tex.Cr.App.1989).  The trial court did
not abuse its discretion in denying appellant=s request for funds for an expert. 
Wyle v. State, supra.  Appellant=s second issue on appeal is overruled.

In his
third issue on appeal, appellant complains that the trial court erred in denying
his challenge for cause for Venireperson Darren Smith.  A trial court's decision regarding a
challenge for cause will not be disturbed absent an abuse of discretion.  Ladd v. State, 3 S.W.3d 547
(Tex.Cr.App.1999), cert. den=d, 146 L.Ed.2d 487, 120 S.Ct. 1680, 529 U.S. 1070 (2000).  The trial court is able to gauge a
venireperson's sincerity and demeanor; therefore, we give great deference to
the trial court's decision concerning a challenge for cause.  Ladd v. State, supra.  

Venireperson
Smith stated during voir dire that he knew the assistant district
attorney.  Venireperson Smith said that
he believed the assistant district attorney was an honest person  and that he would not Aget up there and tell me something that in
his mind is dishonest.@  Venireperson Smith further stated that he
might be inclined to Alean
toward believing something [the assistant district attorney] said.@ However, Venireperson Smith also stated that
he would not feel uncomfortable disagreeing with the assistant district
attorney=s position and that there was nothing in his
relationship with the assistant district attorney that would cause him to be
unfair or impartial in the case. 
Appellant has not shown that the trial court abused its discretion in
denying his challenge for cause for Venireperson Smith.  Appellant=s third issue on appeal is overruled.

In his
fourth and fifth issues on appeal, appellant complains that the trial court
erred in overruling his hearsay objections to testimony by Sides and in denying
his motion for mistrial.  Prior to
trial, appellant filed a motion in limine to prevent Sides from relating
statements the victim had made to Sides on the day of the shooting.  The trial court instructed the State to
approach the bench before offering the testimony.








At trial
during the direct examination of Sides, the State asked if he had had a
conversation with the victim about A[appellant] and his status - - and packing of his clothes?@ 
Sides responded that he had. 
Appellant objected that the victim=s statement would be hearsay. 
The State indicated that it was not offering the testimony for the truth
of the matter asserted but to show Awhat the activities were at that point.@  The trial court allowed the
testimony.  Sides then responded to the
question, A[s]he told me he had pulled a gun on her that
morning and held it to her head - -.@  The trial court sustained
appellant=s objection and instructed the jury to
disregard the statement. 

 Generally, harm from improper testimony is
cured by an instruction to disregard, except in extreme cases where it appears
the evidence is clearly calculated to inflame the minds of the jurors and is of
such character as to suggest the impossibility of withdrawing the impression
produced on their minds.   Gardner v.
State, 730 S.W.2d 675, 696 (Tex.Cr.App.), cert. den=d, 98 L.Ed.2d 206, 108 S.Ct. 248, 484 U.S. 905 (1987);  McKay v. State, 707 S.W.2d 23, 36
(Tex.Cr.App.1985), cert. den=d, 93 L.Ed.2d 164, 107 S.Ct. 239, 479 U.S. 871 (1986).   The State informed the trial court that
Sides= answer was nonresponsive and was not the
anticipated response.  Moreover,
appellant later testified that on the morning of the offense he retrieved his gun
from his pickup and held it to his own head. 
We find that the testimony was not clearly calculated to inflame the
minds of the jurors.  The trial court
did not err in denying appellant=s request for a mistrial. 
Appellant=s fourth and fifth issues on appeal are
overruled.

In his
sixth and seventh issues on appeal, appellant argues that the trial court erred
in denying his motion for new trial.   A
trial court's ruling denying a defendant's motion for new trial is reviewed
under an abuse of discretion standard. 
We do not substitute our judgment for that of the trial court but simply
determine whether the trial court's analysis was arbitrary or
unreasonable.  Salazar v. State, 38
S.W.3d 141 (Tex.Cr.App.), cert. den=d, __ L.Ed.2d __, 122 S.Ct. 127, __ U.S. __ (2001).  There are four requirements for obtaining a
new trial based upon newly discovered evidence: (1) the newly discovered
evidence was unknown to the movant at the time of trial; (2) the movant's
failure to discover the evidence was not due to his want of diligence; (3) the
evidence would probably bring about a different result in another trial; and
(4) the evidence is admissible and not merely cumulative, corroborative,
collateral, or impeaching.  Moore v. State,
882 S.W.2d 844, 849 (Tex.Cr.App.1994), cert. den=d, 130 L.Ed.2d 791, 115 S.Ct. 909, 513 U.S. 1114 (1995). 








Appellant
first argues that the trial court erred in denying his motion for new trial on
the ground of juror misconduct during voir dire.  Appellant filed a motion for new trial in which he alleged that
Juror David Kendall Terry failed to respond appropriately to questions
concerning his bias against appellant. 
During voir dire, Juror Terry stated that he had not formed an opinion
about appellant=s guilt, that he could set aside any
information he had heard prior to trial, and that he could base his decision
only on the evidence heard in the courtroom. 

At a
hearing on the motion, appellant introduced the affidavit of Elizabeth Till in
which she stated that, prior to appellant=s trial, she had had a conversation with Juror Terry in which he stated
that appellant could not get a fair trial in Comanche County and that Ahe either could even pull the plug or throw
the switch.@  Till
stated in her affidavit that she understood Juror Terry=s statement to mean that he could support the
death penalty in appellant=s case.  

Juror
Terry testified at the hearing that he did not recall any question that he
failed to answer appropriately during voir dire and that he did not feel he violated
the oath he took as a juror.  Juror
Terry stated that, when he told Till he did not believe appellant could get a
fair trial in Comanche County, he was not expressing his personal opinion about
appellant=s guilt and that he was not indicating that he
had already formed an opinion as to appellant=s guilt.  Juror Terry testified
that nothing he heard prior to trial influenced his decision in reaching a
verdict.  Juror Terry further testified
that he supported the death penalty when someone was found guilty of murder but
that he had not reached an opinion on punishment in appellant=s case.[1]  Appellant has not shown that Juror Terry
engaged in misconduct during voir dire.

Appellant
next argues that the trial court erred in denying his motion for new trial
based upon the newly discovered evidence of Connie Massingill, a nurse at the
hospital where Sides was brought for treatment after the shooting.  Appellant introduced Massingill=s affidavit in which she stated that, when
Sides= wife arrived at the hospital, Sides told her
that A[he] would have killed that son-of-a-b---- if
[his] gun had not jammed.@ Massingill=s
affidavit states that she consulted with hospital representatives about
reporting the statement but was told that it was not necessary.  After learning of the guilty verdict against
appellant, Massingill became concerned and felt that she should have come
forward with the information. 








The jury
heard evidence that Sides first shot at appellant but that his gun
misfired.  Sides testified that he
intended to shoot appellant.  The trial
court found that, had Massingill=s testimony been admitted at trial, Ait would have opened the door to testimony that [it] had excluded at
[appellant=s] request.@  Appellant did not show that
the trial court abused its discretion in denying his motion for new trial.  Appellant=s sixth and seventh issues on appeal are overruled.  

In his
ninth issue on appeal, appellant contends that the trial court erred in
charging the jury.  The trial court
included the following instruction in its charge to the jury:

You are
instructed that a person commits an offense only if he voluntarily engages in
conduct, including an act, an omission or possession.  Conduct is not rendered involuntary merely because the person did
not intend the results of his conduct. 

 

Appellant argues that the
instruction Atransfers the theory of the case to a conduct
crime rather than a result crime as alleged in the Indictment.@ 
Appellant also argues that the instruction confuses the jury regarding
his arguments on self-defense and lesser included offenses and that it
authorizes a conviction on a theory not alleged in the indictment.  We disagree.

The charge
stated that Aa person commits the offense of murder if he
knowingly causes the death of an individual.@  The charge further stated that
a person acts knowingly Awith respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.@  The
charge instructed the jury to find that appellant committed the offense of
murder only if it found, Asubject to the law of self defense,@ that he knowingly caused the death of the victim.  We do not find that the trial court erred in
charging the jury.  See Adanandus v.
State, 866 S.W.2d 210 (Tex.Cr.App.1993), cert. den=d, 127 L.Ed.2d 686, 114 S.Ct. 1338, 510 U.S. 1215 (1994).  Moreover, appellant has not shown that he
was harmed by the trial court=s charge.  Almanza v. State, 686
S.W.2d 157 (Tex.Cr.App.1985).  Appellant=s ninth issue on appeal is overruled.

The
judgment of the trial court is affirmed.

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

December 20, 2001

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and 

Wright, J., and McCall, J.











[1]We note that the State did not seek the death penalty
in this case.