Affirmed and Opinion filed June 6, 2002









Affirmed and Opinion filed June 6, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00407-CR

____________

 

VICTOR SANTANA CEDANO,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 183rd District Court

Harris County, Texas

Trial
Court Cause No. 852,967

 



 

O
P I N I O N

Victor
Cedano appeals his conviction and 40 year sentence
for possession of more than 400 grams of cocaine with intent to deliver.  Appellant asserts the trial court erred in
admitting an oral statement he made during the search of his home and in
failing to suppress the cocaine. 
Appellant also contends the evidence presented at trial is legally and
factually insufficient to support his conviction.  We affirm.

Background








Appellant
and co-defendant, Alipio Martinez, had been under
surveillance for several months when Officer Robinson of the Houston Police
Department=s narcotics division requested that a patrol officer monitor
appellant for traffic violations on August 15, 2000. Patrol Officer Munoz
responded to the call and detained appellant for failure to signal a right
turn.  Officer Robinson arrived at the
scene of the stop while Munoz attempted to verify appellant=s
license information.  Robinson, speaking
with appellant in Spanish, obtained appellant=s written consent to search his vehicle and residence.  The written consent is described in greater
detail below.

After
the search of appellant=s car yielded no contraband, the officers and appellant left
appellant=s car behind and drove to appellant=s
residence at 126502 Greens Bayou, a garage apartment.  Appellant rode in handcuffs in the backseat
of Officer Munoz= patrol car. Once the officers began to search appellant=s
apartment, Officer Doyle arrived with a narcotic-detecting dog.  The dog alerted to a compartment in the
kitchen and a dresser drawer in appellant=s bedroom.  The officers
found 6.5 kilos of cocaine in the kitchen compartment, $16,000 in cash in the
dresser drawer, and another two Abricks@ of cocaine above the refrigerator.  Scales, plastic bags, duct tape, and a kilo
press were also seized.  On direct
examination at trial, Officer Robinson testified he had the following conversation
with appellant regarding the $16,000 found in the dresser:

Q:
Now, did you have a conversation with anyone in the apartment about that money?

A:
Yes, ma=am.

Q:
Who is that with?

A:
I asked Mr. Cedano about the money.

Q:
What did he say, if anything?

A:
He said he didn=t
know anything about that money, that that money was there when he moved into
that place.

Q:
16,000 was just there when he moved in?

A:
Yes, ma=am.

 








Prior
to trial, appellant had filed a AMotion to Suppress Written Or Oral Statements of Defendant@
and a separate AMotion to Suppress Physical Evidence.@  Appellant=s co-defendant also filed a motion to suppress.  After considerable testimony, the trial court
overruled appellant=s and his co-defendant=s motions.  In overruling
the motions, the trial court made no explicit reference to statements given by
appellant.

Issues

In
his first issue, appellant contends his oral statement was taken without
compliance with Article 38.22 of the Texas Code of Criminal Procedure.  In his second issue, appellant alleges the
cocaine seized at his apartment should have been suppressed because his written
consent was coerced, in violation of his state and federal constitutional
rights.  See U.S. Const. amend. IV; Tex. Const. art. I '
9.

Appellant=s
third issue initially appears to relate to the scope of his consent to the
search of his apartment under the written forms he signed.  However, the vast majority of law and
argument provided pertains to whether appellant=s roadside detention was based upon reasonable suspicion.  We therefore determine whether appellant=s
detention was permissible under Terry v. Ohio and its progeny.[1]  392 U.S. 1 (1968).  Appellant=s last issue, a legal and factual sufficiency complaint, is an
attack on the proof establishing appellant Apossessed@ cocaine.  See Tex. Health & Safety Code Ann '
481.118 (Vernon Supp. 2002) (Aknowingly . . . possesses@).

Discussion

I. 
Review of Motion to Suppress B
Issues One, Two, and Three

A. 
Standard of Review

 








In reviewing the trial court=s ruling on a motion to suppress, we
afford almost total deference to a trial court=s determinations of historical facts
that the record supports and to its rulings on the application of law to fact
questions, also known as mixed questions of law, when those rulings are based
on an evaluation of credibility and demeanor. 
Loserth v. State, 963 S.W.2d
770, 772 (Tex. Crim. App. 1998); Guzman v. State,
955
S.W.2d 85, 87B89
(Tex Crim. App. 1997). 
Mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor are reviewed de novo. Guzman, 955 S.W.2d
at 89.  Where, as here, findings of fact
are not filed, we review the evidence in a light most
favorable to the trial court=s
ruling.  State v. Ballard, 987
S.W.2d 889, 891 (Tex. Crim. App. 1999).

B.  Oral
Statement

Texas law provides that oral statements made by a
criminal accused as a result of custodial interrogation are inadmissible unless
they are electronically recorded and the accused is advised of certain
constitutional rights.  See Tex. Code Crim.
Proc. Ann. art 38.22 ' 3(a) (Vernon
Supp. 2002).  Appellant=s statement was
not recorded, nor was he advised, prior to making the statement, of the rights
identified in article 38.22.  The State
contends (1) appellant has waived error because his objection to Officer
Robinson=s trial
testimony was untimely; and (2) appellant=s statement was
not the result of interrogation. 

1.  Waiver

While appellant did re-urge his objection to the
statement several minutes after Officer Robinson=s recitation,
appellant had previously submitted, and received a ruling on, his objection via
a pre-trial motion to suppress.  The
motion specifically sought to suppress oral statements taken in violation of
article 38.22.  At the hearing on the
motion, appellant=s counsel
questioned Officer Robinson:

Defense:  At any time either before or after you found
the drugs, did my client ever admit he was involved in drug trafficking?  And that includes possessing the drugs you
found?

Prosecutor:  Excuse me. 
I=ll object.  Outside the scope of the hearing.

Defense: I=m trying to suppress
statements, Your Honor.

The Court:  Okay. 
Well, I=ll let him answer.

Robinson: Would you repeat the question?

Defense:  Did my client ever admit he was involved in
the violation B or involved in narcotics
trafficking in general or in particular to the drugs you found that day at any
momentB

Robinson:  No, sir. 

 








At trial, after the allegedly tardy objection, the
trial judge recalled and agreed with appellant that the oral statement at issue
had been presented in appellant=s motion to
suppress:

Defense:  Your Honor, there was a statement made B I had a B it=s not directly related in
terms of dope.  It does relate to the
money.  And I know my motion to suppress
the evidence based on the Fourth Amendment grounds B we had that suppression
motion, and obviously it includes derivative statements that was B go to the statements and the
money and everything else, including the drugs. 
You already ruled on that.  Am I
correct that my motion covered the statements and the drugs and other things
found in the house, the press and everything else?  Am I correct on that?

Court:  Well, yes. 
But I thought the motion went to B 

 

It appears from the lengthy discussion following
this exchange that the court, as well as both defendants and the State, had not
been aware that appellant=s oral
statement had been made in response to a question posed by Officer
Robinson.  The Court concluded:

Defense: I did make a pretrial
motion to suppress oral statements.

Court: I understand that.  And I believe he did say there were no statements
given.  What I was trying to say a minute
ago B we were off the record.  But my understanding was that he didn=t get a confession or any
statement given in response to any custody interrogation when he wasn=t Mirandized
and so forth and so on.  But that was the
context I understood the motion to go to.

Defense: Right.

Court: And this
was sort of a res gestae
thing of this evidence coming in and what was said.

One of appellant=s pre-trial
motions was explicitly directed toward oral statements. At the suppression
hearing, appellant=s counsel
clearly expressed a desire to suppress statements.  The court overruled appellant=s motion.  Despite the possibility that there was some
misunderstanding at the motion hearing regarding the existence of the statement
at issue, we hold the court heard and overruled an objection to the statement
at the motion hearing.








Under these facts, appellant=s pre-trial
motion to suppress is sufficient to preserve error.  See Tex.
R. Evid. 103(a)(1) (error preserved without
trial objection where error objection ruled upon outside of jury=s presence);
Flores v. State, 840 S.W.2d 753, 755B56 (Tex.
App.CEl
Paso 1992, no pet.) (citing Wyle v. State, 777 S.W.2d 709, 715
n.5 (Tex. Crim. App. 1989).  Appellant=s did not waive
error by failing to object anew at trial.  Id.

2.  Custodial
Interrogation

The State next contends the statement was not given
as a result of interrogation.[2]  Rhode
Island v. Innis, 446 U.S. 291, 301 (1980)
(holding interrogation includes any words or actions by the police that are
reasonably likely to elicit an incriminating response from the suspect); Tex. Code Crim.
Proc. Ann. art 38.22 ' 3(a) (Vernon Supp. 2002) (Acustodial interrogation@).  We need
not decide this issue because, even if the trial court erred in admitting the
statement, the violation of the statute will be disregarded unless it affected
appellant=s substantial rights. Hughes v. State, 24
S.W.3d 833, 837 n.2 (Tex. Crim. App. 2000); Moore v. State, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999) (applying non-constitutional harm standard
to violation of article 38.22).  

A substantial right is affected where the error had a substantial
or injurious effect or influence in determining the jury=s verdict.  Tex. R. App. P. 44.2(b); Llamas v.
State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000). 
Appellant=s trial strategy was to contest the State=s proof that he resided in the apartment where the
drugs were found.  The statement links
appellant to the apartment.  However, as
we discuss in detail below in our sufficiency review, other physical and
testimonial evidence strongly links appellant to the apartment.  For this reason, we hold that the
introduction of the statement had only a slight influence, if any, upon the
jury=s verdict and did not affect appellant=s substantial rights.  We overrule appellant=s first issue.








C.  Admittance of Cocaine

1.  Voluntariness of
Consent

 

Appellant alleges the consent to search his home is invalid
because it was coerced.  See Schneckloth v. Bustamonte,
412 U.S. 218B19 (1973) (U.S. Constitution); State v. Ibarra,
953 S.W.2d 242, 243 (Tex. Crim. App. 1997) (Texas
Constitution).  Although the federal
constitution only requires the State to prove the voluntariness
of consent by a preponderance of the evidence, the Texas Constitution requires
the State to show by clear and convincing evidence that the consent was freely
given. Ibarra, 953 S.W.2d at 245. We therefore review the evidence under
the more protective Texas standard.  Johnson
v. State, 68 S.W.3d
644, 653 (Tex.
Crim. App. 2002); Carmouche v. State,
10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

In determining whether an accused=s consent to search is voluntary, we look to the
totality of the circumstances.  Johnson,
68 S.W.3d at 653 n.32 (citing Ohio v. Robinette, 519
U.S. 33, 40 (1996)); Reasor v. State,
12 S.W.3d 813, 818 (Tex. Crim. App. 2000). 
Here, appellant, a Spanish-speaker, conversed with a Spanish-speaking
officer.  Appellant executed several consent
forms written in the Spanish language. 
The forms indicate in large, easily-readable print, that appellant had
the right to refuse consent.  Appellant
places great emphasis upon the fact that the consent to search his apartment
was solicited at a location other than the apartment itself.  We do not believe this distinction
demonstrates the consent was involuntary. 
The address of appellant=s apartment is clearly written on the consent
form.  At the hearing on appellant=s motion to suppress, Officer Robinson testified
appellant was not handcuffed when he gave his consent to search his residence
and had not been physically or verbally threatened.  Officer Robinson testified to the following:

A:  No, ma=am.  As a matter of fact, I
presented him the form after I=d filled it out; and I showed it to him.  And when I gave it to him, he looked at it;
and then he asked me if I would read it to him. 
And then, after B 

Q:  You=d already showed him the form.








A:  Right.  I showed him the form.  And he looked at it.  When I first gave to it him [sic], I guess he
thought it was an English; and he asked me if I would read it for him.  And then he saw that it was in Spanish; and
he said, ANo.  It=s in Spanish.  I can read
it.@

Q:  Did he actually say, AI can read it@?

A:  Yes, ma=am.

 

Against this evidence, appellant contends his subsequent, brief
hesitation in opening the door to his apartment demonstrates a lack of
consent.  Officer Robinson testified
appellant appeared to pretend his key would not open his front door.  As appellant fiddled with the key, one of the
officers in the group knocked on the door. 
Co-defendant Martinez answered the door and the officers walked
inside.  Reconciling the testimony
concerning appellant=s behavior at his door with his unequivocal,
written consents is a task best suited to the trial judge.  Guzman, 955 S.W.2d at 89 (evaluation
based on demeanor).  Giving proper
deference to the trial court=s determination, we hold that the State proved by
clear and convincing evidence that appellant consented to the search of his
apartment.  We overrule appellant=s second issue.

2.  Reasonable Suspicion

We next determine whether appellant=s continued detention beyond that necessary to
fulfill the purpose of the initial traffic stop was lawful.  See Florida v. Royer, 460 U.S. 491,
500 (1983) (A[a]n investigative detention must be temporary and
last no longer than is necessary to effectuate the purpose of the stop.@).  An
officer is generally justified in briefly detaining an individual on less than
probable cause for the purposes of investigating possibly‑criminal
behavior where the officer can Apoint to specific and articulable
facts which, taken together with rational inferences from those facts,
reasonably warrant [the] intrusion.@ Terry, 392 U.S. at 21; Davis v. State,
947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (ATexas courts require reasonable suspicion before a
seizure of the person or property can occur.@)








In Edmond v. State, we addressed the law governing consent
searches following traffic stops.  2002
Tex. App. LEXIS 2486 (Tex. App.CHouston [14th Dist.] April 4, 2002, no pet. h.).  Unlike in Edmond, here discussions
with appellant regarding drugs began prior to completion of the traffic
investigation.[3]  However, it is also probable that Officer
Munoz=s traffic investigation concluded prior to
appellant=s acquiescence to the search of his vehicle and
residence.  Munoz testified:

Q:  I=m talking about B I know that=s when the narcotics officers arrived.  Okay. 
You stopped him.  Three to five
minutes later, Narcotics arrived.  After
that point how much more time before you verified his license as being valid?

A:  No, sir, I don=t recall that.

Q:  Narcotics arrives.  You=re holding him because you=re, as you state, still investigating the traffic stop, the
signal; you=re still trying to verify the license; but you=re also still holding him because Narcotics told you to B right?  B those three reasons.

A:  Yes, sir.

Q:  Okay.  How long after Narcotics arrived did you
continue to hold him before you transported him to the other location?

A:  I don=t recall the specific time, sir. 
I can=t remember.

Q:  Can you give an
estimate?

A:  No, sir.  It=s been awhile; so, I don=t remember.

. . . 

Q:  Okay.  You said you don=t know how long Narcotics was keeping them there.  But did Narcotics question him there at the
scene?

A:  I don=t know if they questioned him. 
I know they talked to him, sir.

Q:  But you don=t know how long?

A:  No, sir.

 

Robinson
stated:








Q:  All right.  By the time you arrived and started talking
to my client and before you obtained a consent, how much time elapsed?

A:  I don=t know.  It wasn=t very B it wasn=t very much at all, though.

 

As
we stated in Edmond, the principal inquiry under Terry is the
length of time that elapsed between conclusion of the traffic investigation and
the evolution of the encounter from a detention to a consensual situation.  Edmond, 2002 Tex. App. LEXIS at *6.  The key portions of the record, set forth
above, provide no assistance in estimating this length of time.  Viewing the record in the light most
favorable to the trial court=s ruling, we are therefore unable to say the trial
court abused its discretion in finding appellant=s road-side detention did not violate Terry=s second prong.  Ballard,
987 S.W.2d at 891.  Appellant=s consents were therefore not the product of an
illegal detention and the physical evidence was properly admitted at
trial.  Mapp v. Ohio, 367 U.S. 643, 655
(1961) (evidence obtained through search violating Fourth Amendment not
admissible).  We overrule appellant=s third issue.

II.  Legal and Factual Sufficiency  B Issue Four

A.  Standards of Review

 

Evidence is legally sufficient if, viewed in the light most
favorable to the verdict, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson v. Virginia,
443 U.S. 307, 319 (1979).  In performing a legal
sufficiency analysis, we review the evidence in the light most favorable to the
verdict.  Maldonado v. State, 998
S.W.2d 239, 242 n.3 (Tex. Crim. App. 1999) (citing Jackson,
443 U.S. at 319).








Evidence at trial is factually insufficient if a
neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury=s determination.  Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).  Evidence is factually insufficient if: (1) it
is so weak as to render the result clearly wrong and manifestly unjust; or (2)
the adverse finding is against the great weight and preponderance of the available
evidence.  Id.  In our review, we must be careful not to
intrude on the jury=s role as the sole judge
of the credibility of the witnesses or the weight to be given their
testimony.  Id. at 9.

B.  Discussion

When an accused is charged with unlawful possession of cocaine,
the State must prove: (1) the defendant exercised actual care, custody,
control, or management over the contraband; and (2) the accused knew the object
he possessed was contraband.  Linton
v. State, 15 S.W.3d 615, 618 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d); see also Tex. Health & Safety Code Ann. '' 481.112(a), 481.102(3rd) (Vernon Supp. 2002).  While the element of possession may be
proved  by circumstantial evidence, such
evidence must affirmatively link the defendant to the offense, so that one may
reasonably infer the defendant knew of the contraband=s existence and exercised control over it.  Hyett v.
State, 58 S.W.3d 826, 830 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d.) (citing McGoldrick
v. State, 682 S.W.2d 573, 578 (Tex. Crim. App.
1985)).  Appellant contends the evidence
is insufficient to prove knowing possession because he did not live at the
apartment on Greens Bayou where the drugs were found.  We disagree.

Appellant was under Arolling surveillance@ for several months.  During that time, Officer Robinson observed
appellant come and go from the apartment many times.  Robinson observed appellant participating on
many occassions in Aheat runs,@ an activity drug dealers engage in to determine if
they are being followed.  When Robinson
first spoke with appellant at the road-side, appellant denied knowing anything
about the apartment.  Appellant lied to
Robinson, stating he lived in Alvin at an address listed on his temporary Texas
identification card.  Only after Robinson
told appellant they had just seen him leaving Greens Bayou did appellant admit
he lived there.[4]  Appellant=s passport was found in a bedroom dresser together
with the bundle of cash.  A shirt Officer
Robinson had seen appellant wearing on a prior day was also found in the
bedroom.








Other physical evidence indicates anyone present in the house
would be involved in drug activity. 
Within the residence, police officers found two guns, a kilo press, more
than 8 kilos of cocaine, albeit concealed, multiple documents containing
mathematical notations consistent with drug sale activities, and $16,000 in
cash wrapped in cellophane.  Robinson
testified drug dealers often wrap their money in cellophane.  We hold the trial evidence logically links
appellant to the drugs found within the apartment.  See Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (logical force, not quantity, of affirmatively
links is paramount).  Viewed in the light
most favorable to the verdict, the evidence is sufficient to enable a rational
jury to conclude beyond a reasonable doubt that appellant possessed
cocaine.  Maldonado, 998 S.W.2d at 242.

We are aware that appellant=s counsel suggested by way of cross-examination
that appellant received the keys to the apartment merely as an incident to
borrowing the car in which he was detained.  We also note the State produced no evidence
appellant owned, leased, or paid utility bills for services at the apartment.
We are equally cognizant that appellant was detained at a location away from
the apartment and, more importantly, that the drugs were well concealed within
the apartment.  Viewing all the evidence
neutrally, we cannot say the result reached by the jury is wrong or unjust, or
against the great weight and preponderance of the evidence.  Johnson, 23 S.W.3d at 11.  We overrule appellant=s fourth issue.

Accordingly, the judgment below is affirmed.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed June 6, 2002.

Panel
consists of Justices Yates, Seymore, and Guzman.

Do
Not Publish C Tex. R. App. P. 47.3(b).











[1]  The State has
also chosen to treat appellant=s third issue as an attack under Terry.





[2]  Officers
Robinson and Munoz both testified appellant was in custody at the time he gave
the statement.  Therefore, no question
regarding custody is raised.





[3]  Officer Munoz=s traffic investigation was prolonged because
appellant presented an out-of-country driver=s
license.  See Davis, 947 S.W.2d at
245 (officer may demand identification, a valid driver=s license, and proof of insurance from the driver, and
check for outstanding warrants). 





[4]  Officer
Robinson testified, without objection, that appellant admitted he lived in the
apartment.