COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-117-CR
 
  
MARCUS 
DWAYNE AUGUST                                                  APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
four points, Appellant Marcus Dwayne August appeals his capital murder 
conviction, claiming that the trial court erred by 1) overruling Appellant’s 
request to have the trial court hear prospective jurors’ excuses for jury 
duty, 2) allowing the State to amend the indictment on the day of trial, 3) 
admitting Appellant’s oral statement, and 4) allowing the State’s expert 
witnesses to testify. We affirm.
Factual and 
Procedural Background
        In 
May 2002, Carl Taylor, his brother Rashid Barrett, and Yusuf Shabazz were in the 
business of selling cocaine from an apartment located in the Woodhaven 
neighborhood of Fort Worth. Sometime in the early morning hours of May 12, 2002, 
Shabazz received a telephone call from Taylor,[2] 
asking him if he knew someone by the name of “Little Marcus.” Shabazz told 
Taylor that he did not know anyone by that name. Taylor asked Shabazz to get in 
touch with his brother, Barrett, and stated that there was “something funny 
about the guy.” Shabazz testified that he could hear someone in the background 
saying, “They know me man, they know me.” Afterwards, Shabazz stated that he 
heard Taylor drop the phone, static, and then the phone went dead. Shabazz 
immediately called Barrett and got into his car and drove to the apartment where 
Taylor was located. Upon arriving, he smelled gunsmoke, and noticed a hole 
through the apartment door. Officer Mark Reese arrived at the scene shortly 
before Barrett. Officer Reese entered the apartment and saw that there was blood 
on the living room carpet, shotgun casings, and a body, later identified as 
Taylor, lying on the floor next to a bedroom door. Taylor had been shot three 
times with a shotgun and six times with a handgun. Jodie Williams, who had 
purchased drugs from Taylor on the day of the shooting, testified that two 
individuals she knew as “Man” and “Marcus” were at Taylor’s apartment. 
She stated that “Man” told her he was angry at Taylor and was going to get 
him back. She also testified that “Man” and “Marcus” found her later 
that morning and gave her some cocaine in exchange for her silence about 
“Man’s” earlier threats.
        On 
June 4, 2002, Appellant was arrested, and Shabazz positively identified the gun 
that Appellant had on him at the time of his arrest as the Tec-9 that had been 
taken from the apartment during the shooting. Appellant also gave a 
tape-recorded statement in which he admitted that he and three others had gone 
to Taylor’s apartment and blasted their way inside. However, he claimed that 
his involvement was limited to providing information about how Taylor operated 
his drug business and how to get inside the apartment. But while Appellant was 
in jail awaiting trial, he stated that he carried the shotgun, knocked on the 
door, and had to kill someone.
        After 
hearing the evidence, a jury found Appellant guilty of capital murder. The State 
waived the death penalty and Appellant was sentenced to life imprisonment. This 
appeal followed.
Jury Panel
        Appellant 
filed a pretrial motion requesting that the trial court, not the jury 
administrator, evaluate and determine the propriety of prospective jurors’ 
excuses. He complains that because the trial court overruled his motion, there 
was not a fair cross-section of the population from which to pick the jury. In 
response, the State first argues that article 35.03 does not require the trial 
judge to make rulings with respect to veniremembers summoned to the central jury 
room who have not yet been assigned to a particular case. Second, the State 
argues that Appellant has not established that the trial court’s failure to 
re-summon potential jurors resulted in any violation of the fair cross-section 
requirement of the Sixth Amendment.
        Article 
35.03 of the Texas Code of Criminal Procedure provides that the trial court is 
required to personally rule on excuses and disqualifications of prospective 
jurors. Tex. Code Crim. Proc. art. 
35.03 (Vernon 1989). Article 35.03, subsection 1, provides in part that “the 
court shall then hear and determine excuses offered for not serving as a 
juror” and may discharge jurors or postpone their service accordingly. Id. 
Subsection 2 provides that under a plan approved by the commissioner’s court 
of the county, “in a case other than a capital felony case, the court’s 
designee may hear and determine an excuse” and postpone a juror’s service. 
Appellant claims that in a capital case, the trial judge is the only person who 
may rule on excuses and disqualifications.
        Nothing 
in the plain language of the provisions cited by Appellant requires the trial 
judge to make rulings with respect to venirememebers summoned to the central 
jury room who have not yet been assigned to the case. See Chambers v. State, 
903 S.W.2d 21, 30 (Tex. Crim. App. 1995). In Chambers, the court stated:
   
The language in subsection (2) of article 35.03, providing that the court’s 
designee may make decisions on excuses in cases other than capital felony 
cases is troubling. However, when viewed in the context of the jury formation 
process, we again cannot conclude that this language would prohibit the general 
assembly judge from designating personnel to make such decisions. This is 
because at the time the summoned jurors apply for excuses, they have not been 
assigned to any particular case. There is no way of knowing what kind of case 
the prospective jurors would subsequently be assigned to, capital or noncapital.
 
 
Id.  
Here, as in Chambers, the potential jurors who were excused by court 
designees were general assembly veniremembers and were not assigned to 
Appellant’s or any other particular case. Furthermore, the trial judge had the 
opportunity to hear and rule on excuses and qualifications of those 
veniremembers who were assigned to Appellant’s case from the central jury room 
and who appeared before the trial judge in Appellant’s case. We overrule 
Appellant’s first point.
Deletion of 
Language From Indictment
        In 
his second point, Appellant complains that the trial court erred by allowing the 
State to amend the indictment on the day of trial. The State contends that the 
indictment was not amended to charge a different offense but that an alternative 
mental state was abandoned, which did not change the offense alleged. 
Immediately prior to jury selection, the State informed the trial court that it 
wanted to delete the words “or knowingly” from the indictment. The trial 
court allowed the language to be deleted over Appellant’s objection.
        Article 
28.10 of the Code of Criminal Procedure governs the amendment of an indictment 
or information. See Tex. Code 
Crim. Proc. Ann. art. 28.10. Article 28.10 provides:
  
        (a)    After 
notice to the defendant, a matter of form or substance in an indictment or 
information may be amended at any time before the date the trial on the merits 
commences. On the request of the defendant, the court shall allow the defendant 
not less than 10 days, or a shorter period if requested by the defendant, to 
respond to the amended indictment or information.
 
        (b)    A 
matter of form or substance in an indictment or information may also be amended 
after the trial on the merits commences if the defendant does not object.
 
        (c)    An 
indictment or information may not be amended over the defendant’s objection as 
to form or substance if the amended indictment or information charges the 
defendant with an additional or different offense or if the substantial rights 
of the defendant are prejudiced.
   
Tex. Code Crim. Proc. Ann. art. 28.10.  None of the three sections 
provide for the amendment of an indictment on the day of trial prior to the 
commencement of trial on the merits.  See Valenti v. State, 
49 S.W.3d 594, 598 (Tex. App.—Fort Worth 2001, no pet.). The court of criminal 
appeals has determined that it is error for the State to amend the indictment on 
the day of trial prior to the beginning of the proceedings. Sodipo v. State, 
815 S.W.2d 551, 556 (Tex. Crim. App. 1991) (op. on reh’g); State v. Murk, 
815 S.W.2d 556, 558 (Tex. Crim. App. 1991). To preserve error, a defendant must 
object to the amendment either at the time it is made or once the trial begins. See 
Sodipo, 815 S.W.2d at 556; Murk, 815 S.W.2d at 558.
        In 
Sodipo, the trial court permitted the state to amend the indictment, over 
the defendant’s objections, before jury selection. Sodipo, 815 S.W.2d 
at 555. The Texas Court of Criminal Appeals reversed Sodipo’s conviction, 
explaining that the absolute provisions of Article 28.10 cannot be subject to a 
harmless error analysis in a meaningful manner. Id. at 556.
        While 
the Texas Court of Criminal Appeals has not overruled Sodipo in the 
specific context of Article 28.10, more recent cases suggests harm analysis is 
required. In Matchett v. State, the court of criminal appeals ruled that 
cases involving statutes with absolute requirements should be examined with a 
“case by case determination of whether in fact a meaningful harm analysis is 
possible.” 941 S.W.2d 922, 928 (Tex. Crim. App. 1996) (plurality opinion), cert. 
denied, 521 U.S. 1107 (1997). The following year, the court of criminal 
appeals stated that “[e]xcept for certain federal constitutional errors 
labeled by the United States Supreme Court as ‘structural,’ no error, 
whether it relates to jurisdiction, voluntariness of a plea, or any other 
mandatory requirement, is categorically immune to a harmless error analysis.” Cain 
v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (superseded by statute 
on other grounds).
        Here, 
Appellant properly preserved error by objecting to the amendment of the 
indictment on the day of trial. Furthermore, the trial court erred by allowing 
the amendment on the date of the trial. Having found error, we must conduct a 
harm analysis to determine whether the error calls for reversal of the judgment. 
Tex. R. App. P. 44.2. If the error 
is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond 
a reasonable doubt that the error did not contribute to appellant’s conviction 
or punishment. Tex. R. App. P. 
44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it does not 
affect the appellant’s substantial rights. Tex. R. App. P. 44.2(b); see Mosley 
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 
642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).
        The 
error in this case involves a statutory violation, not a constitutional error. Valenti, 
49 S.W.3d at 598. Because we determine that the error is not constitutional, 
rule 44.2(b) is applicable. Tex. R. App. 
P. 44.2(b). Therefore, we are to disregard the error unless it affected 
appellant’s substantial rights. Id. A substantial right is affected 
when the error had a substantial and injurious effect or influence in 
determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271 
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 
776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d at 643. In 
making this determination, we review the record as a whole. See Johnson v. 
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
        To 
determine whether the trial court’s error affected a substantial right of 
Appellant, we will examine the possible outcomes to the trial had the indictment 
not been erroneously amended. The critical inquiry requires consideration of two 
questions:
   
whether the indictment, as written, informed the defendant of the charge against 
him sufficiently to allow him to prepare an adequate defense at trial, and 
whether prosecution under the deficiently drafted indictment would subject the 
defendant to the risk of being prosecuted later for the same crime.
 
  
Gollihar 
v. State, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001) (quoting United 
States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000)).
        The 
central question now before us is whether Appellant had adequate notice to 
prepare a defense. The essential purpose of the indictment is to provide an 
accused notice of the allegations against him sufficient to allow him to prepare 
a defense. See Curry v. State, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000). 
Although Appellant objected to the State striking the words “or knowingly” 
from the indictment by arguing that his client had previously been charged only 
with the offense of murder, and this change in the indictment upgraded the 
charge to capital murder, the record before us clearly reflects that Appellant 
was aware that he was being charged with capital murder.
        The 
court of criminal appeals has held that the inclusion of the word 
“knowingly” in an indictment charging capital murder does not render the 
indictment defective. Wyle v. State, 777 S.W.2d 709, 717 (Tex. Crim. App. 
1989); Castillo v. State, 739 S.W.2d 280, 299 (Tex. Crim. App. 1987), cert. 
denied, 487 U.S. 1228 (1988); East v. State, 702 S.W.2d 606, 616 
(Tex. Crim. App.), cert. denied, 474 U.S. 1000 (1985); Wilder v. State, 
583 S.W.2d 349, 360-61 (Tex. Crim. App. 1979), vacated on other grounds, 
453 U.S. 902 (1981). The indictment in this case, before and after deletion of 
the words “or knowingly,” adequately alleged capital murder.
        Furthermore, 
on January 8, 2004, Appellant filed a motion to appoint an expert and order 
examination of DNA evidence, which alleged, “The Defendant is charged with the 
offense of Capital Murder.” Then, on February 9, 2004, Appellant filed a 
motion regarding juror excuses, which involved article 35.03 discussed in 
Appellant’s first point. As previously stated, article 35.03 governs the 
hearing of juror excuses in capital murder cases.
        We 
conclude that, in the context of the entire case against Appellant, the trial 
court’s error in deleting the words “or knowingly” from the indictment did 
not have a substantial or injurious effect on the jury’s verdict and did not 
affect appellant’s substantial rights. See King, 953 S.W.2d at 271. 
Thus, we disregard the error. See Tex. 
R. App. P. 44.2(b). Accordingly, we overrule Appellant’s second point.
Appellant’s 
Oral Statement
        In 
point three, Appellant complains that the trial court erred by admitting his 
oral statement because it was not taken in compliance with article 38.22 of the 
code of criminal procedure. Specifically, he complains that there was no 
affirmative waiver of the statutory warnings, and no identification of 
Appellant’s voice contained on the audiotape. The State contends that article 
38.22 does not require that an express waiver of rights or identification of 
Appellant’s voice be contained on a recorded statement.
        Article 
38.22, section 3 provides that
 
        (a)    No 
oral or sign language statement of an accused made as a result of custodial 
interrogation shall be admissible against the accused in a criminal proceeding 
unless:
                (1)    an 
electronic recording, which may include motion picture, video tape, or other 
visual recording, is made of the statement;
                (2)    prior 
to the statement but during the recording the accused is given the warning in 
Subsection (a) of Section 2 above and the accused knowingly, intelligently, and 
voluntarily waives any rights set out in the warning;
                (3)    the 
recording device was capable of making an accurate recording, the operator was 
competent, and the recording is accurate and has not been altered; [and]
                (4)    all 
voices on the recording are identified.
                         . 
. . .
  
 
Tex. Code Crim. Proc. Ann. art. 38.22, 
§ 3 (Vernon Supp. 2005). Although Appellant complains that the waiver provision 
was violated because Appellant never affirmatively waived his rights, the court 
of criminal appeals has held that the waiver provision of section 3(a)(2) does 
not require that the recording reflect an express waiver of the rights. See 
Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); Etheridge v. 
State, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994), cert. denied, 516 
U.S. 920 (1995).
        The 
record reveals that on June 5, 2002, an audiotape interview with Appellant was 
taken by Detective T.W. Boetcher and Detective S.J. Waters. The pertinent part 
of the recording provides as follows:
   
        Detective:  This 
is going to be an interview taking place at the Forensic Science Polygraph 
Office in Plano, Texas. Present in the interview room is Detective S.J. Waters 
and Detective T.W. Boetcher, along with Marcus August. The interview is taking 
place on June 5th of 2002 at 1750 hours. I’m going to read these rights to 
you, okay. I read them to you yesterday. After I read them to you I need you to 
say, out loud, that you understand them, okay.
 
        August:     Okay
 
        Detective:  Alright. 
You have the right to remain silent and not make any statement at all and any 
statement you make may be used against you at your trial. Do you understand?
 
        August:     Yeah, 
I understand.
 
        Detective:  Any 
statement you make may be used as evidence against you in court; do you 
understand?
 
        August:     I 
understand that.
 
        Detective:  You 
have the right to have a lawyer present to advise you prior to or during any 
questioning; do you understand?
 
        August:     I 
understand.
 
        Detective:  If 
you’re unable to employ a lawyer, you have the right to have a lawyer 
appointed to advise you prior to and during any questioning; do you understand?
 
        August:     I 
understand.
 
        Detective:  You 
have the right to terminate the interview at any time; do you understand?
 
        August:     Okay, 
I understand.
 
        Detective:  Do 
you understand your rights?
 
        August:     I 
understand.
 
        Detective:  Alright. 
These are the same that I read to you yesterday. Are you understanding?
 
        August:     I 
understand them.
 
 
        Here, 
there is no question that Appellant received the warnings required by article 
38.22. The recording reflects that Appellant was given the warnings during the 
recording and prior to giving his statement. Furthermore, Appellant indicated 
after each warning that he understood his rights. Following this Appellant 
proceeded to give his statement to the detectives. He never indicated his 
unwillingness to speak with the detective, never asked for an attorney, and 
never indicated that he wished to terminate the interview. There is nothing in 
the statement that indicates Appellant did not knowingly, intelligently, and 
voluntarily waive his rights.
        Additionally, 
Appellant contends that the trial court erred by admitting the tape recorded 
statement because all voices on the tape were not identified on the tape itself. 
Both Appellant and the State, as well as this court, were unable to locate a 
published case directly addressing the issue of whether voice identification is 
required to appear on the tape recorded statement. However, the State does cite 
an unpublished opinion from the first court of appeals dealing with voice 
identification on recorded statements. See Petry v. State, No. 
01-86-00517-CR, 1987 WL 14550, at *2 (Tex. App.—Houston [1st Dist.] July 23, 
1987, no pet.) (not designated for publication) (holding that there is no 
requirement that identification be made on the recording; instead, 
identification of voices by a witness at trial is sufficient to satisfy art. 
38.22). The State also argues that the governing statute does not specifically 
require that the voice identification be made on the recording.
        However, 
we need not address that particular issue in this case. The evidence in this 
case clearly shows that at the beginning of the audio tape recording Boetcher[3] identifies the three individuals in the room as Detective 
S.J. Waters, Detective T.W. Boetcher, and Marcus August.  Moreover, it is 
clear from a review of the audio recording that the warnings Boetcher gave were 
directed at Appellant and not at Waters.  We hold that there was sufficient 
identification of the voices on the audio tape recording of Appellant’s 
statement.  Accordingly, we overrule Appellant’s third point.
Expert 
Witnesses
        In 
his fourth point, Appellant argues that the trial court erred by allowing the 
State’s expert witnesses to testify in violation of article 39.14(b). 
Specifically, Appellant complains that B.R. Patterson, Treva Armstrong, Anh Chu, 
and Dr. Marc Krouse should not have been allowed to testify because he was not 
provided with their names and addresses in a timely fashion. The State responds 
that it provided Appellant with the names and addresses of all expert witnesses 
on the date ordered by the trial court,[4] and even if 
the State’s notice was untimely it did not act in bad faith.
        Article 
39.14(b) provides that upon the motion of a party, the court may order the other 
party to disclose the name and address of each person the other party may use at 
trial to present evidence under Texas Rules of Evidence 702, 703, and 705. Tex. Code Crim. Proc. Ann. art. 
39.14(b).  Appellant filed a motion for discovery on October 14, 2002, 
which requested the names, addresses, and telephone numbers of the State’s 
expert witnesses.  Thereafter, on November 3, 2003, the State filed a list 
of potential witnesses, without addresses, that identified several of the listed 
witnesses as experts.  On January 26, 2004, the trial court signed a 
scheduling order that ordered the State and Defense to disclose their experts by 
February 9, 2004.  Appellant timely filed the required disclosure.  
The State did not file its first amended list of potential witnesses until 
February 23, 2004.  Patterson’s, Armstrong’s, and Chu’s names 
appeared on this list denoting them as potential expert witnesses.  
However, their addresses and Dr. Krouse’s name do not appear on this 
list.  On March 2, 2004, the State filed its second amended list of 
potential witnesses which again did not include addresses or Dr. Krouse’s 
name.  It was not until March 4, 2004, when the State filed its second 
amended addendum to expert witness disclosure that the list included all of the 
above mentioned witnesses along with their addresses.
        The 
decision to allow a witness who was not listed on the State’s witness list to 
testify is a matter within the trial court’s discretion.  Martinez v. 
State, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993), cert. denied, 512 
U.S. 1246 (1994); Fincher v. State, 980 S.W.2d 886, 888 (Tex. App.—Fort 
Worth 1998, pet. ref’d). The factors a reviewing court considers in 
determining whether there has been an abuse of discretion are (1) a showing of 
bad faith on the part of the prosecutor in failing to disclose the witness’s 
name before trial, (2) whether the defendant could have reasonably anticipated 
that the witness would testify, even though his or her name was not included on 
the list.  Nobles v. State, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 
1992).
        Here, 
the record simply does not reflect bad faith on the part of the 
prosecutor.  The State’s notification, though close in time to trial, was 
provided to Appellant, as opposed to no notification that a particular witness 
would be called to testify.  See Castaneda v. State, 28 S.W.3d 216, 
223 (Tex. App.—El Paso 2000, pet. ref’d) (holding that providing notice to 
defense one week before calling a witness does not indicate bad faith).  
Furthermore, Appellant certainly could have reasonably anticipated that these 
four witnesses would testify because all four of the witnesses were listed on 
his own expert witness disclosure filed on February 9, 2004.  We hold that 
the trial court did not abuse its discretion by allowing the State’s witnesses 
to testify.  Accordingly, we overrule Appellant’s fourth point.
Conclusion
        Having 
overruled Appellant’s four points on appeal, we affirm the trial court’s 
judgment.
  
   
                                                                  PER 
CURIAM
 
  
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 23, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Taylor was at the apartment where the drugs were being sold when he placed the 
telephone call to Shabazz.
3.  
The transcribed audio tape recording and the testimony of Boetcher reveals that 
he is the detective who identified the three individuals present in the room 
when the statement was taken.
4.  
We note that the State argues that it provided Appellant with the names and 
addresses of all expert witnesses by the date ordered by the trial court. 
However, the record reference cited for this argument is Appellant’s expert 
witness disclosure. We are unable to locate any expert witness disclosure filed 
by the State, which met the date ordered by the trial court and contained all 
names and addresses of the four expert witnesses at issue.