AUGUST v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-117-CR

MARCUS DWAYNE AUGUST APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In four points, Appellant Marcus Dwayne August appeals his capital murder conviction, claiming that the trial court erred by 1) overruling Appellant’s request to have the trial court hear prospective jurors’ excuses for jury duty, 2) allowing the State to amend the indictment on the day of trial, 3) admitting Appellant’s oral statement, and 4) allowing the State’s expert witnesses to testify.  We affirm.

Factual and Procedural Background

In May 2002, Carl Taylor, his brother Rashid Barrett, and Yusuf Shabazz  were in the business of selling cocaine from an apartment located in the Woodhaven neighborhood of Fort Worth.  Sometime in the early morning hours of May 12, 2002, Shabazz received a telephone call from Taylor,
(footnote: 2) asking him if he knew someone by the name of “Little Marcus.”  Shabazz told Taylor that he did not know anyone by that name.  Taylor asked Shabazz to get in touch with his brother, Barrett, and stated that there was “something funny about the guy.”  Shabazz testified that he could hear someone in the background saying, “They know me man, they know me.”  Afterwards, Shabazz stated that he heard Taylor drop the phone, static, and then the phone went dead.  Shabazz immediately called Barrett and got into his car and drove to the apartment where Taylor was located.  Upon arriving, he smelled gunsmoke, and noticed a hole through the apartment door.  Officer Mark Reese arrived at the scene shortly before Barrett.  Officer Reese entered the apartment and saw that there was blood on the living room carpet, shotgun casings, and a body, later identified as Taylor, lying on the floor next to a bedroom door.  Taylor had been shot three times with a shotgun and six times with a handgun.  Jodie Williams, who had purchased drugs from Taylor on the day of the shooting, testified that two individuals she knew as “Man” and “Marcus” were at Taylor’s apartment.  She stated that “Man” told her he was angry at Taylor and was going to get him back.  She also testified that “Man” and “Marcus” found her later that morning and gave her some cocaine in exchange for her silence about “Man’s” earlier threats.

On June 4, 2002, Appellant was arrested, and Shabazz positively identified the gun that Appellant had on him at the time of his arrest as the Tec-9 that had been taken from the apartment during the shooting.  Appellant also gave a tape-recorded statement in which he admitted that  he and three others had gone to Taylor’s apartment and blasted their way inside.  However, he claimed that his involvement was limited to providing information about how Taylor operated his drug business and how to get inside the apartment.  But while Appellant was in jail awaiting trial, he stated that he carried the shotgun, knocked on the door, and had to kill someone.

After hearing the evidence, a jury found Appellant guilty of capital murder.  The State waived the death penalty and Appellant was sentenced to life imprisonment.  This appeal followed.

Jury Panel

Appellant filed a pretrial motion requesting that the trial court, not the jury administrator, evaluate and determine the propriety of prospective jurors’ excuses.  He complains that because the trial court overruled his motion, there was not a fair cross-section of the population from which to pick the jury.  In response, the State first argues that article 35.03 does not require the trial judge to make rulings with respect to veniremembers summoned to the central jury room who have not yet been assigned to a particular case.  Second, the State argues that Appellant has not established that the trial court’s failure to re-summon potential jurors resulted in any violation of the fair cross-section requirement of the Sixth Amendment.

Article 35.03 of the Texas Code of Criminal Procedure provides that the trial court is required to personally rule on excuses and disqualifications of prospective jurors.  
Tex. Code Crim. Proc
. art. 35.03 (Vernon 1989).  Article 35.03, subsection 1, provides in part that “the court shall then hear and determine excuses offered for not serving as a juror” and may discharge jurors or postpone their service accordingly.  
Id
.  Subsection 2 provides that under a plan approved by the commissioner’s court of the county, “in a case other than a capital felony case, the court’s designee may hear and determine an excuse” and postpone a juror’s service.  Appellant claims that in a capital case, the trial judge is the only person who may rule on excuses and disqualifications.

Nothing in the plain language of the provisions cited by Appellant requires the trial judge to make rulings with respect to venirememebers summoned to the central jury room who have not yet been assigned to the case.  
See Chambers v. State
, 903 S.W.2d 21, 30 (Tex. Crim. App. 1995).  In 
Chambers
, the court stated:

The language in subsection (2) of article 35.03, providing that the court’s designee may make decisions on excuses in cases 
other than 
capital felony cases is troubling.  However, when viewed in the context of the jury formation process, we again cannot conclude that this language would prohibit the general assembly judge from designating personnel to make such decisions.  This is because at the time the summoned jurors apply for excuses, they have not been assigned to any particular case.  There is no way of knowing what kind of case the prospective jurors would subsequently be assigned to, capital or noncapital.

Id.
  Here, as in 
Chambers
, the potential jurors who were excused by court designees were general assembly veniremembers and were not assigned to Appellant’s or any other particular case.  Furthermore, the trial judge had the opportunity to hear and rule on excuses and qualifications of those veniremembers who were assigned to Appellant’s case from the central jury room and who appeared before the trial judge in Appellant’s case.  We overrule Appellant’s first point.

Deletion of Language From Indictment

In his second point, Appellant complains that the trial court erred by allowing the State to amend the indictment on the day of trial.  The State contends that the indictment was not amended to charge a different offense but that an alternative mental state was abandoned, which did not change the offense alleged.  Immediately prior to jury selection, the State informed the trial court that it wanted to delete the words “or knowingly” from the indictment.  The trial court allowed the language to be deleted over Appellant’s objection. Article 28.10 of the Code of Criminal Procedure governs the amendment of an indictment or information.  
See
 
Tex. Code Crim. Proc. Ann
. art. 28.10. Article 28.10 provides:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences.  On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information. 

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant’s objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Tex. Code Crim. Proc. Ann
. art. 28.10.  None of the three sections provide for the amendment of an indictment on the day of trial prior to the commencement of trial on the merits.  
See
 
Valenti v. State
, 49 S.W.3d 594, 598 (Tex. App.—Fort Worth 2001, no pet.).  The court of criminal appeals has determined that it is error for the State to amend the indictment on the day of trial prior to the beginning of the proceedings.  
Sodipo v. State
, 815 S.W.2d 551, 556 (Tex. Crim. App. 1991) (op. on reh’g); 
State v. Murk
, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991).  To preserve error, a defendant must object to the amendment either at the time it is made or once the trial begins.  
See Sodipo
, 815 S.W.2d at 556; 
Murk
, 815 S.W.2d at 558.

In 
Sodipo
, the trial court permitted the state to amend the indictment, over the defendant’s objections, before jury selection.  
Sodipo
, 815 S.W.2d at 555.  The Texas Court of Criminal Appeals reversed Sodipo’s conviction, explaining that the absolute provisions of Article 28.10 cannot be subject to a harmless error analysis in a meaningful manner.  
Id
. at 556.

While the Texas Court of Criminal Appeals has not overruled 
Sodipo
 in the specific context of Article 28.10, more recent cases suggests harm analysis is required.  In 
Matchett v. State
, the court of criminal appeals ruled that cases involving statutes with absolute requirements should be examined with a “case by case determination of whether in fact a meaningful harm analysis is possible.”  941 S.W.2d 922, 928 (Tex. Crim. App. 1996) (plurality opinion), 
cert. denied
, 521 U.S. 1107 (1997).  The following year, the court of criminal appeals stated that “[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as ‘structural,’ no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.”  
Cain v. State
, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (superseded by statute on other grounds).

Here, Appellant properly preserved error by objecting to the amendment of the indictment on the day of trial.  Furthermore, the trial court erred by allowing the amendment on the date of the trial.  
Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

The error in this case involves a statutory violation, not a constitutional error.  
Valenti
, 49 S.W.3d at 598.  Because we determine that the error is not constitutional, rule 44.2(b) is applicable.  
Tex. R. App. P.
 44.2(b).  Therefore, we are to disregard the error unless it affected appellant’s substantial rights.  
Id.
  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole. 
 See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 

To determine whether the trial court’s error affected a substantial right of Appellant, we will examine the possible outcomes to the trial had the indictment not been erroneously amended.  The critical inquiry requires consideration of two questions:

whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

Gollihar v. State
, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001) (quoting
 United States v. Sprick
, 233 F.3d 845, 853 (5th Cir. 2000)). 

The central question now before us is whether Appellant had adequate notice to prepare a defense.  The essential purpose of the indictment is to provide an accused notice of the allegations against him sufficient to allow him to prepare a defense.  
See Curry v. State
, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000).  Although Appellant objected to the State striking the words “or knowingly” from the indictment by arguing that his client had previously been charged only with the offense of murder, and this change in the indictment upgraded the charge to capital murder, the record before us clearly reflects that Appellant was aware that he was being charged with capital murder.

The court of criminal appeals has held that the inclusion of the word “knowingly” in an indictment charging capital murder does not render the indictment defective.  
Wyle v. State
, 777 S.W.2d 709, 717 (Tex. Crim. App. 1989); 
Castillo v. State
, 739 S.W.2d 280, 299 (Tex. Crim. App. 1987), 
cert. denied
, 487 U.S. 1228 (1988); 
East v. State
, 702 S.W.2d 606, 616 (Tex. Crim. App.), 
cert. denied
, 474 U.S. 1000 (1985); 
Wilder v. State
, 583 S.W.2d 349, 360-61 (Tex. Crim. App. 1979), 
vacated on other grounds
, 453 U.S. 902 (1981).  The indictment in this case, before and after deletion of the words “or knowingly,” adequately alleged capital murder.

Furthermore, on January 8, 2004, Appellant filed a motion to appoint an  expert and order examination of DNA evidence, which alleged, “The Defendant is charged with the offense of Capital Murder.”  Then, on February 9, 2004, Appellant filed a motion regarding juror excuses, which involved article 35.03 discussed in Appellant’s first point.  As previously stated, article 35.03 governs the hearing of juror excuses in capital murder cases. 

We conclude that, in the context of the entire case against Appellant, the trial court’s error in deleting the words “or knowingly” from the indictment did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
See
 
Tex. R. App. P.
 44.2(b).
  Accordingly, we overrule Appellant’s second point.

Appellant’s Oral Statement

In point three, Appellant complains that the trial court erred by admitting his oral statement because it was not taken in compliance with article 38.22 of the code of criminal procedure.  Specifically, he complains that there was no affirmative waiver of the statutory warnings, and no identification of Appellant’s voice contained on the audiotape.  The State contends that article 38.22 does not require that an express waiver of rights or identification of Appellant’s voice be contained on a recorded statement.

Article 38.22, section 3 provides that

(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; [and]

(4) all voices on the recording are identified.

. . . .  

Tex. Code Crim. Proc. Ann
. art. 38.22, § 3 (Vernon Supp. 2005).  Although Appellant complains that the waiver provision was violated because Appellant never affirmatively waived his rights, the court of criminal appeals has held that the waiver provision of section 3(a)(2) does not require that the recording reflect an express waiver of the rights.  
See Rocha v. State
, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); 
Etheridge v. State
, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994), 
cert. denied
, 516 U.S. 920 (1995). 

The record reveals that on June 5, 2002, an audiotape interview with Appellant was taken by Detective T.W. Boetcher and Detective S.J. Waters. The pertinent part of the recording provides as follows:

Detective: This is going to be an interview taking place at the Forensic Science Polygraph Office in Plano, Texas.  Present in the interview room is Detective S.J. Waters and Detective T.W. Boetcher, along with Marcus August.  The interview is taking place on June 5th
 of 2002 at 1750 hours.  I’m going to read these rights to you, okay.  I read them to you yesterday.  After I read them to you I need you to say, out loud, that you understand them, okay.

  

August: Okay

Detective: Alright.  You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial. Do you understand?

August: Yeah, I understand.

Detective: Any statement you make may be used as evidence against you in court; do you understand?

August: I understand that.

Detective: You have the right to have a lawyer present to advise you prior to or during any questioning; do you understand?

August: I understand.

Detective: If you’re unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning; do you understand?

August: I understand. 

Detective: You have the right to terminate the interview at any time; do you understand?

August: Okay, I understand.

Detective: Do you understand your rights?

August: I understand. 

Detective: Alright.  These are the same that I read to you yesterday.  Are you understanding?

August: I understand them.

Here, there is no question that Appellant received the warnings required by article 38.22.  The recording reflects that Appellant was given the warnings during the recording and prior to giving his statement.  Furthermore, Appellant indicated after each warning that he understood his rights. Following this Appellant proceeded to give his statement to the detectives.  He never indicated his unwillingness to speak with the detective, never asked for an attorney, and never indicated that he wished to terminate the interview.  There is nothing in the statement that indicates Appellant did not knowingly, intelligently, and voluntarily waive his rights.

Additionally, Appellant contends that the trial court erred by admitting the tape recorded statement because all voices on the tape were not identified on the tape itself.  Both Appellant and the State, as well as this court, were unable to locate a published case directly addressing the issue of whether voice identification is required to appear on the tape recorded statement.  However, the State does cite an unpublished opinion from the first court of appeals dealing with voice identification on recorded statements.  
See Petry v. State
, No. 01-86-00517-CR, 1987 WL 14550, at *2 (Tex. App.—Houston [1st Dist.] July 23, 1987, no pet.) (not designated for publication) (holding that there is no requirement that identification be made on the recording; instead, identification of voices by a witness at trial is sufficient to satisfy art. 38.22).  The State also argues that the governing statute does not specifically require that the voice identification be made on the recording.

However, we need not address that particular issue in this case.  The evidence in this case clearly shows that at the beginning of the audio tape recording Boetcher
(footnote: 3) identifies the three individuals in the room as Detective S.J. Waters, Detective T.W. Boetcher, and Marcus August.  Moreover, it is clear from a review of the audio recording that the warnings Boetcher gave were directed at Appellant and not at Waters.  We hold that there was sufficient identification of the voices on the audio tape recording of Appellant’s statement.  Accordingly, we overrule Appellant’s third point.

Expert Witnesses

In his fourth point, Appellant argues that the trial court erred by allowing the State’s expert witnesses to testify in violation of article 39.14(b).  Specifically, Appellant complains that B.R. Patterson, Treva Armstrong, Anh Chu, and Dr. Marc Krouse should not have been allowed to testify because he was not provided with their names and addresses in a timely fashion.  The State responds that it provided Appellant with the names and addresses of all expert witnesses on the date ordered by the trial court,
(footnote: 4) and even if the State’s notice was untimely it did not act in bad faith.

Article 39.14(b) provides that upon the motion of a party, the court may order the other party to disclose the name and address of each person the other party may use at trial to present evidence under Texas Rules of Evidence 702, 703, and 705. 
Tex. Code Crim. Proc. Ann
. art. 39.14(b).  Appellant filed a motion for discovery on October 14, 2002, which requested the names, addresses, and telephone numbers of the State’s expert witnesses.  Thereafter, on November 3, 2003, the State filed a list of potential witnesses, without addresses, that identified several of the listed witnesses as experts.  On January 26, 2004, the trial court signed a scheduling order that ordered the State and Defense to disclose their experts by February 9, 2004.  Appellant timely filed the required disclosure.  The State did not file its first amended list of potential witnesses until February 23, 2004.  Patterson’s, Armstrong’s, and Chu’s names appeared on this list denoting them as potential expert witnesses.  However, their addresses and Dr. Krouse’s name do not appear on this list.  On March 2, 2004, the State filed its second amended list of potential witnesses which again did not include addresses or Dr. Krouse’s name.  It was not until March 4, 2004, when the State filed its second amended addendum to expert witness disclosure that the list included all of the above mentioned witnesses along with their addresses.

The decision to allow a witness who was not listed on the State’s witness list to testify is a matter within the trial court’s discretion.  
Martinez v. State
, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993), 
cert. denied
, 512 U.S. 1246 (1994); 
Fincher v. State
, 980 S.W.2d 886, 888 (Tex. App.—Fort Worth 1998, pet. ref’d).  The factors a reviewing court considers in determining whether there has been an abuse of discretion are (1) a showing of bad faith on the part of the prosecutor in failing to disclose the witness’s name before trial, (2) whether the defendant could have reasonably anticipated that the witness would testify, even though his or her name was not included on the list.  
Nobles v. State
, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992).

Here, the record simply does not reflect bad faith on the part of the prosecutor.  The State’s notification, though close in time to trial, was provided to Appellant, as opposed to no notification that a particular witness would be called to testify.  
See Castaneda v. State
, 28 S.W.3d 216, 223 (Tex. App.—El Paso 2000, pet. ref’d) (holding that providing notice to defense one week before calling a witness does not indicate bad faith).  Furthermore, Appellant  certainly could have reasonably anticipated that these four witnesses would testify because all four of the witnesses were listed on his own expert witness disclosure filed on February 9, 2004.  We hold that the trial court did not abuse its discretion by allowing the State’s witnesses to testify.  Accordingly, we overrule Appellant’s fourth point.

Conclusion

Having overruled Appellant’s four points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 23, 2005

FOOTNOTES
1:
See
 Tex. R. App. P.
 47.4.

2:
Taylor was at the apartment where the drugs were being sold when he placed the telephone call to Shabazz.

3:
The transcribed audio tape recording and the testimony of Boetcher reveals that he is the detective who identified the three individuals present in the room when the statement was taken.

4:
We note that the State argues that it provided Appellant with the names and addresses of all expert witnesses by the date ordered by the trial court.  However, the record reference cited for this argument is Appellant’s expert witness disclosure.  We are unable to locate any expert witness disclosure filed by the State, which met the date ordered by the trial court and contained all names and addresses of the four expert witnesses at issue.